829 F.2d 1340
 41 Ed. Law Rep. 1225
 Leonard T. WHITLOCK; Sandra H. Whitlock; David K.
Whitlock, a minor, by his next friend, Michelle
Robertson, Plaintiffs-Appellants,
v.
DUKE UNIVERSITY; Peter B. Bennett, Ph.D., Defendants-Appellees.
and
Duke University Medical Center; F.G. Hall Laboratory, Defendant.
 No. 86-1175.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 4, 1987.
Decided Oct. 6, 1987.
 
 Richard Stanley Scott (Malley, Scott, Koffman & Heston, Pittsburgh, Pa., Donald Haskell Beskind, Beskind & Rudolph, Chapel Hill, N.C., on brief), for plaintiffs-appellants.
 Robert Morris Clay (Theodore B. Smyth, Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, Raleigh, N.C., on brief), for defendants-appellees.
 Before RUSSELL, WIDENER, and CHAPMAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Leonard T. Whitlock, his former wife, Sandra H. Whitlock, and son, David K. Whitlock appeal the district court's granting of summary judgment in favor of the defendants, Duke University and Dr. Peter B. Bennett. Whitlock v. Duke University, 637 F.Supp. 1463 (M.D.N.C.1986). Because we find no error in the action taken by the district court, we affirm.
 
 
 2
 Leonard Whitlock (Whitlock) brought this diversity action, seeking compensation for injuries he claims he suffered while participating in a simulated deep dive experiment conducted by the F.G. Hall Laboratory at Duke University. Peter B. Bennett, a Ph.D., is the director of that laboratory at Duke University. Mrs. Whitlock and their son David sued for loss of companionship resulting from Whitlock's injuries.
 
 
 3
 Whitlock is an experienced diver, with a college degree in oceanographic technology. He has worked in his field for many years and has participated in several diving programs. One such diving program was the Atlantis Series conducted by the F.G. Hall Laboratory at Duke University. The Atlantis program was a series of simulated deep dives to research high pressure nervous syndrome. These dives did not take place in water but were simulated through a hyper-baric chamber pressurized with a mixture of gases. Whitlock participated in the first of these dives, known as Atlantis I. Atlantis I lasted 18 days and reached a simulated depth of 1500 feet. Whitlock suffered no adverse effects from participation in Atlantis I. He was out of the country when the Atlantis II experiment was conducted. When he knew he would be returning to the United States, Whitlock wrote to Dr. Bennett at Duke about the possibility of his inclusion in the Atlantis III experiment.
 
 
 4
 After being selected for the Atlantis III dive, Whitlock underwent pre-dive testing and training. Whitlock signed an informed consent form. That form listed as potential risks from compression such things as hearing loss, inflammation of the ears and sinusitis, difficulty getting the air pressure in the ears, sinuses, teeth, lungs and intestines to equal the increasing pressure outside the body, and lung collapse. The form stated that risks associated with decompression included decompression sickness which could cause death or disability, and the risks associated with exposure to simulated altitudes could cause the diver to become unconscious and seriously injured. It stated that equipment failure could lead to serious injury or death. Further, the form stated that because these kinds of experiments had not been performed in the past, there could exist other risks unknown at that time. The form advised that compensation would be paid only when the injury was caused by negligence.
 
 
 5
 The Atlantis III dive lasted for 43 days and reached a simulated depth of 2250 feet, a new world record. Following completion of the Atlantis III dive, Whitlock began to experience physical problems. He asserts that he suffered organic brain damage as a result of the dive.
 
 
 6
 Whitlock then brought this suit against Duke University and Dr. Bennett, head of the laboratory conducting the Atlantis dives, alleging they were liable for fraud, conspiracy to commit fraud, breach of their fiduciary duty, intentional infliction of emotional distress, negligent failure to warn of the risk of organic brain damage, violation of the federal regulation, 45 C.F.R. Sec. 46.116,[1] regulating human experimentation, strict liability for ultra-hazardous activity and strict liability for human experimentation. The district court thoroughly considered each of these claims in its opinion and decided in favor of the defendants on each count. Whitlock appeals, alleging numerous errors committed by the district court. His principal claim on appeal is that the district court erred in its conclusion that the defendants did not either fraudulently or negligently misrepresent or conceal from him the risk of organic brain damage.
 
 
 7
 In order to prove fraud under North Carolina law, Whitlock must show: (1) that the defendants made a representation of a material fact or concealed a material fact, (2) that such representation was false, (3) that the defendants knew that such representation was false or that the defendants made such a representation recklessly without any knowledge of its truthfulness, (4) that such representation was made with the intention that the plaintiff rely upon it, (5) that the plaintiff reasonably relied upon the false representation, and (6) that the plaintiff was injured. Johnson v. Phoenix Mut. Life Ins. Co., 300 N.C. 247, 266 S.E.2d 610, 615 (1980); see also Ragsdale v. Kennedy, 286 N.C. 130, 209 S.E.2d 494, 500 (1974).
 
 
 8
 A review of the record convinces us, as the district court was convinced, that Whitlock's claim for fraud must fail because he was a highly educated and quite sophisticated diver and admittedly knew that some form of permanent brain damage could result from this type of dive. Thus, Whitlock reasonably could not have relied upon any such fact which might have been represented or concealed. Since failure to prove an essential element of fraud is fatal, Whitlock's claim must fail under state law. Johnson, 266 S.E.2d at p. 619; Russo v. Mountain High, Inc., 38 N.C.App. 159, 247 S.E.2d 654, 657 (1978).
 
 
 9
 We also agree with the district court's finding that Dr. Bennett had no knowledge of a reasonably foreseeable risk of permanent organic brain damage in the Atlantis III dive and therefore could not have concealed such a fact from Whitlock, either fraudulently or negligently. In his deposition, Dr. Bennett stated that he had been involved with deep dive research since the 1960's and had seen no evidence of organic brain damage from such dives. He further stated that the possibility of organic brain damage was not contained in the informed consent form for Atlantis III because it was not a normal condition for experimental deep diving. Before the Atlantis III dive, Dr. Bennett was not aware of any information indicating that some divers suffered post-dive temporary or permanent neurological defects.
 
 
 10
 Whitlock sought to contradict Dr. Bennett's testimony, and thus avoid summary judgment in favor of the defendants, by relying upon part of his own deposition where he stated that medical studies conducted prior to Atlantis III revealed symptoms similar to those he suffered. Whitlock never submitted those studies or any similar medical evidence to the district court for consideration prior to the award of summary judgment in favor of the defendants. Whitlock at 1469. We agree with the district court that Whitlock's statement standing alone is insufficient to create a genuine issue of material fact as to fraudulent concealment by Dr. Bennett. We reject Whitlock's claim that we should consider the contents of depositions of his experts taken prior to the granting of summary judgment below but not submitted to the district court before summary judgment was entered. Whitlock merely referred to these experts' opinions in his own answers to interrogations and in his brief in opposition of defendants' motion for summary judgment. The district court did not err in declining to rely upon Whitlock's statements of what these depositions contained when the depositions themselves were not submitted to the district court. We also decline to consider these depositions on appeal because they properly were not considered by the district court.
 
 
 11
 We find no merit to Whitlock's claim that the defendants fraudulently concealed his post-dive injuries. Dr. Bennett stated in his deposition that he found no evidence of Whitlock's suffering from organic brain disease. Again, Whitlock relied upon the depositions of Drs. Youngblood and Ginsberg that he was in fact suffering from organic brain damage as a result of the dive. These are depositions that were never given to the district court. See Whitlock at 1473-1476.
 
 
 12
 We have reviewed Whitlock's other claims of error and find that the district court more than adequately discussed these claims. Whitlock at 1469-1476. We find no reversible error in those raised on appeal. Because Whitlock's claims for relief fail on the merits, his former wife's and son's claims for loss of consortium must also fail.
 
 
 13
 Accordingly, the judgment of the district court is
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 As the district court noted, Sec. 46.116 was not in effect at the time of the simulated dive, but its standard of care was adopted by the district court as North Carolina law. See Whitlock, p. 1475