Scott ALLEN, Plaintiff–Appellant,

v.

MINNSTAR, INC., doing business as Genmar Industries, Inc., doing business as Wellcraft Marine, and Outboard Marine Corporation, Defendants–Appellees,

Genmar Industries, Inc., doing business as Wellcraft Marine, Defendant–Third–Party Plaintiff–Appellee,

Mitchell Huffman and Melvin Huffman, Third–Party Defendants–Appellees.

Nos. 90–4004, 90–4199.

United States Court of Appeals, Tenth Circuit.

Nov. 1, 1993.

Jackson Howard of Howard, Lewis & Petersen, Provo, UT (D. David Lambert and Leslie W. Slaugh of Howard, Lewis & Petersen, with him on the brief), for plaintiff-appellant.

Warren E. Platt of Snell & Wilmer, Phoenix, AZ (Eileen J. Moore of Snell & Wilmer, Phoenix, AZ, and Todd S. Winegar and Karra J. Porter of Christensen, Jensen & Powell, Salt Lake City, UT, with him on the brief), for defendant-appellee Outboard Marine Corp.

Stephen B. Nebeker of Ray, Quinney & Nebeker, Salt Lake City, UT (Anthony B. Quinn and Douglas H. Patton of Ray, Quin-

ney & Nebeker, with him on the brief), for defendant-appellee Wellcraft Marine.

Before LOGAN and HOLLOWAY, Circuit Judges, and BRETT,[*] District Judge.

HOLLOWAY, Circuit Judge.

Plaintiff/appellant Scott Allen appeals from a summary judgment in favor of defendants/appellees Minnstar, Inc., dba Genmar Industries, Inc., dba Wellcraft Marine (Wellcraft) and Outboard Marine Corporation (OMC) on Allen's strict product liability claim (No. 90–4004). The claim arises out of a boating accident in which Allen was struck and severely injured by the propeller on a 1978 Wellcraft boat powered by an OMC engine. Allen alleges that the engine was defectively designed because it was not equipped with a propeller guard to prevent injuries resulting from physical contact with the propeller.

In No. 90–4199, Allen appeals from an order of September 20, 1990, refusing to allow the filing in the district court of the deposition of one of Allen's expert witnesses, Bryan Chadwell. This order was entered after the grant of the summary judgment for OMC and Wellcraft on Allen's strict liability claim. This second appeal, No. 90–4199, was companioned with No. 90–4004 for argument by an order of this court on February 14, 1991. Both appeals will be treated by this opinion.

In No. 90–4004, Allen contends he presented sufficient evidence on his strict liability claim to raise triable issues of fact so that summary judgment was error; Allen maintains that although Utah law did not require him to do so, he nevertheless presented a genuine issue of material fact as to whether there was an alternative safer design at the time the stern drive was manufactured; finally Allen argues that enhanced injury principles do not apply to the instant case.

I

On August 30, 1985, Allen went for a midnight boat ride on the Utah portion of Lake Powell with some friends. The boat, a planing pleasure craft, was a 1978 Wellcraft Marine, Model 165 Airslot I/O, powered by an OMC 140 horsepower inboard/outboard engine. Allen was sitting in the front of the boat when, in order to avoid an obstacle in the water, the driver made a sharp turn, causing Allen to fall overboard. The boat ran over Allen who was struck and severely injured by the boat's unguarded propeller. The propeller lacerated his left leg to the bone and the leg had to be amputated above the knee. Other severe injuries were also suffered by Allen.

On December 1, 1986, Allen brought suit against defendants on a strict product liability theory, alleging *inter alia* that the boat was defectively designed and unreasonably dangerous because it was not equipped with a propeller guard. In July 1989, OMC moved for summary judgment, arguing that Allen had failed to produce evidence sufficient to support an enhanced injury claim, including evidence that a safer and commercially feasible engine design was available when the boat was manufactured in 1977. Wellcraft joined the motion, requesting partial summary judgment "to the extent plaintiff has attempted to charge it with the same [propeller] defect." I R.Doc. 181 at 2. In their joint motion, defendants argued that the enhanced injury doctrine necessarily applied because the alleged product defect, the lack of a propeller guard, did not cause the accident itself but enhanced the resulting injuries to Allen.

The district court denied defendants' motion but requested supplemental briefing on the enhanced injury issue. After such briefing, the court reconsidered and granted the motion in a Supplemental Ruling dated August 17, 1989. The court's order provided for subsequent issuance of a more detailed memorandum.

Four days after the court's Supplemental Ruling, Allen filed a motion for relief pursuant to Federal Rules of Civil Procedure 54(b), 59(a)(2) and 60(b), relying once again

[*] The Honorable Thomas R. Brett, United States District Judge for the Northern District of Okla-homa, sitting by designation.

on the contention that the enhanced injury doctrine did not apply or, if it did, triable issues of fact remained as to the availability of a safer and commercially feasible design. In a Supplemental Ruling and Memorandum Decision dated November 20, 1989, the district court denied Allen's motions, but stated: "This court agrees that this is not an enhanced injury case, but a design defect case." *Id.* at 4. In support of its denial of the motions, the court reasoned that:

Without evidence of technically feasible alternative designs at the time the product was manufactured, a jury trial on the design defect issue is inappropriate. This court is unwilling to set a new precedent in products liability law by imposing liability on manufacturers whose products conform to the safety standards of the industry, but do not incorporate every possible safety feature regardless of cost or effect on performance of the manufacturer's product. For those reasons this court granted summary judgment in favor of defendant OMC.

*Id.* at 10.

Allen filed a timely notice of appeal on December 21, 1989. On January 5, 1990, the district judge filed a Supplemental Order on Motion for Summary Judgment in which it reaffirmed its granting of the motion as to both OMC and Wellcraft "on claims related to prop guarding...." I R.Doc. 220 at 2.[1] On January 31, 1990, the district court determined pursuant to Fed.R.Civ.P. 54(b) that its supplemental summary judgment ruling in favor of both OMC and Wellcraft was "final and appealable." *Id.* at 2.

## II

We first treat an important issue concerning the proper scope of the record before us on this appeal. The issue is the extent to which a deposition of an expert of the plaintiff, Bryan Chadwell, is properly before us.

In April 1990 Allen filed a motion in the district court to permit a copy of the deposition of Chadwell to be filed in lieu of the original and become part of the record on appeal. Both Allen and defendants cited portions of the deposition in their summary judgment briefs and some pages of it were attached, but neither the complete original deposition nor a copy of it was ever filed with the district court. The district judge said at the August 17, 1989, summary judgment hearing that he would "receive the Bryan Chadwell deposition...." Transcript of hearing, Brief of Appellant (No. 90–4199) at 13. In its Ruling and Order filed November 13, 1990, the court denied Allen's motion to permit filing of the deposition:

Allen suggests that Rule 10(e) of the Federal Rules of Civil [sic] Procedure provides a basis for his request to file the Chadwell deposition. However, that rule authorizes modification of the record only to the extent necessary to "truly disclose[ ] what occurred in the district court." Although this court authorized the filing of the Chadwell deposition during the course of the proceedings before it, counsel never filed the deposition, hence it was never considered by this court. To now make it a part of the record would mislead the court of appeals.

Brief of Appellant (No. 90–4199), App. "D" at 2.[2] As noted, Allen separately appeals the district court's denial of his motion to supplement the record (No. 90–4199).

■ Defendants question our jurisdiction in No. 90–4199, arguing that the district court's denial of Allen's motion to supplement the record was not a final decision within the meaning of 28 U.S.C. § 1291, citing *Lamp v. Andrus*, 657 F.2d 1167 (10th Cir.1981), *inter*

---

1. In his brief, Allen states that his "claims against Wellcraft for the defective and unreasonably dangerous condition of the boat remain pending." Brief for Appellant at 5. Based on the record before us, we cannot ascertain precisely what, if any, additional claims Allen may have against Wellcraft, although the Second Amended Complaint does make a broad allegation of unspecified "defective conditions that made [the boat] unreasonably dangerous." I R.Doc. 16 at 2. Our review and disposition on appeal are limited by the terms of the district court's final ruling, *i.e.*, the summary judgment in favor of OMC and Wellcraft "on claims related to prop guarding...." I R.Doc. 220 at 2.

2. It appears that reference was intended to be made to Rule 10(e) of the Federal Rules of Appellate Procedure.

*alia.* We believe that the court's ruling, albeit post-judgment, did finally decide this separate matter in controversy and is therefore subject to review by this court pursuant to § 1291. *See* 9 J. Lucas, J. Moore & J. Ward, *Moore's Federal Practice* ¶ 110.14[1] at 184–85 (2d ed. 1993) (post-judgment orders appealable if final and otherwise unreviewable); *Delaney's Inc., v. Illinois Union Ins. Co.,* 894 F.2d 1300, 1304–05 (11th Cir. 1990) (ruling on motion for clarification of judgment is final decision appealable under § 1291).

■ As to the merits of Allen's appeal in No. 90–4199, we conclude that the district court did not err in refusing to permit filing of the complete Chadwell deposition which was not filed at the time of the ruling on defendants' motion for summary judgment:

> Rule 10(e) is not designed to allow a district court "to add to the record on appeal matters that did not occur there in the course of proceedings leading to the judgment under review." [Citations.] In other words, ... [the district court] is not authorized under Rule 10(e) to "augment the record on appeal with deposition transcripts that were not on the record before it at the time its final decision was rendered." [Citation.] This is so because "the only proper function of a court of appeals is to review the decision below on the basis of the record that was made before the district court." [Citations.] To the extent there be an "inherent equitable power" to supplement the record exceeding the power provided in Rule 10(e), such power is to be exercised not by [the district court], but by the Court of Appeals. [Citation.]

*Jones v. Jackson Nat. Life Ins. Co.,* 819 F.Supp. 1385, 1387 (W.D.Mich.1993) (citations omitted).

Had the Chadwell deposition been before the district court at the time of the summary judgment ruling but been "omitted from the record by error or accident," the district court would have authority, under the express language of Rule 10(e) of the Federal Rules of Appellate Procedure, to add the deposition to the record in order that the record "truly disclose[ ] what occurred in the district court" and "conform to the truth." Fed.R.App.P. 10(e). This was not the case, however. At the final hearing on August 17, 1989, on the motion for summary judgment, counsel for Allen moved for publication of all depositions "on file with the court that have been quoted in the memoranda, together with the van Discell, Bryan Chadwell, and Lawrence Thibault depositions." The judge said he thought the request was proper, "and I would order those depositions published." August 17, 1989, Tr. at 28–29. However, it appears that the Chadwell deposition as a whole was not before the district court at that time.

Allen's brief in No. 90–4199, pp. 10–11, argues that it is obvious that Allen's counsel made no conscious decision to exclude the Chadwell deposition from the record, that they made the motion below to publish the depositions, and that the district court had authority to include the Chadwell deposition as part of the record on appeal, citing *Ross v. Kemp,* 785 F.2d 1467 (11th Cir.1986). However in its November 13, 1990 Ruling and Order (Brief of Appellant, No. 90–4199, App. D at 2), the judge stated: "Although this court authorized the filing of the Chadwell deposition during the course of the proceedings before it, counsel never filed the deposition, hence it was never considered by this court. To now make it a part of the record would mislead the court of appeals." Under these circumstances we cannot say that the district court abused its discretion in denying Allen's motion to supplement the record with the Chadwell deposition. The order denying that motion is affirmed.[3]

### III

Allen has also filed a Rule 10(e) Fed. R.App.P. motion in this court asking us to supplement the record with the Chadwell deposition. On April 8, 1991, we granted the

---

**3.** This case is distinguishable from *Ross v. Kemp* in which the appellate court granted a motion to add a deposition to the record on appeal where both parties had reasonably assumed the deposition was filed below, had relied thereon in the proceedings, and had cited the deposition in their pleadings. 785 F.2d at 1471–72 and nn. 6–7.

motion "without prejudice to the objections [by defendants] to portions of the Chadwell deposition that the record may show were not offered in the trial court or considered by the trial judge." Order at 1–2. We noted that "[t]he final determination on the scope of the deposition to be considered will be made in the opinion of the court when the entire record has been reviewed." *Id.* at 2. We now address the question left open in our April 8, 1991, order, *i.e.*, what portions of the Chadwell deposition, if any, can be considered on appeal. As noted, both Allen and defendants cited portions of the Chadwell deposition in their respective summary judgment briefs below, but the deposition as a whole was not filed and published in the district court.

■ In responding to the defendants' motion for summary judgment below, Allen was entitled to designate, *inter alia*, any parts of the Chadwell deposition purportedly establishing triable issues of fact. Portions of the deposition not filed below or presented to the district court could not properly be considered by the court and, *ipso facto*, cannot be considered by us in reviewing the court's judgment:

Fed.R.Civ.P. 56(e) "requires ... the non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' *designate* 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, [323–25] 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis added). In her response to [appellee's summary judgment] motion, [appellant] designates no specific facts to

which she testifies in her deposition ... that would support her version of this case. *We cannot consider her second deposition ... because our review is confined to an examination of materials before the lower court at the time the ruling was made; subsequent materials are irrelevant.* [Citations.]

*Nissho–Iwai American Corp. v. Kline,* 845 F.2d 1300, 1307 (5th Cir.1988) (former emphasis in original; latter emphasis added). As we have stated before, this court "will not reverse the grant of summary judgment ... based on evidence not before the district." *Ambus v. Granite Board of Education,* 975 F.2d 1555 (10th Cir.1992).[4] Accordingly we note these observations in *Whitlock v. Duke University,* 829 F.2d 1340 (4th Cir.1987):

We reject [appellant's] claim that we should consider the contents of [the] deposition[ ] of his expert[ ] taken prior to the granting of summary judgment below but not submitted to the district court before summary judgment was entered. [Appellant] merely referred to th[is] expert['s] opinions ... in his brief in opposition of defendants' motion for summary judgment. The district court did not err in declining to rely upon [appellant's] statements of what th[is] deposition[ ] contained when the deposition[ ] [itself was] not submitted to the district court. We also decline to consider th[is] deposition[ ] on appeal because [it] properly w[as] not considered by the district court.

*Id.* at 1343.[5]

In short, our reliance on the Chadwell deposition must be limited to those portions

---

**4.** See also *Boone v. Carlsbad Bancorporation, Inc.,* 972 F.2d 1545, 1548 n. 1 (10th Cir.1992) ("[w]e will not review [the appendix to brief] because it was not before the district court when the various rulings were made"); *Topalian v. Ehrman,* 954 F.2d 1125, 1131–32 n. 10 (5th Cir.) ("[t]his court's inquiry is limited to the summary judgment record before the trial court: the parties cannot add exhibits, depositions, or affidavits to support their positions on appeal, nor may the parties advance new theories or raise new issues to secure reversal"), *cert. denied,* — U.S. —, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992); *Welch v. Celotex Corp.,* 951 F.2d 1235, 1237 n. 3 (11th Cir.1992) ("[u]pon review of a grant by district court of a motion for summary judgment, a fed-

eral appellate court may examine only the evidence which was before the district court when the latter decided the motion for summary judgment"); *Dominick v. Dixie Nat. Life Ins. Co.,* 809 F.2d 1559, 1573 (11th Cir.1987) ("[t]he evidence which appellants claim [require reversal] are attached as exhibits to their brief. They were not, however, presented to the trial court prior to the grant of summary judgment. We therefore refuse to consider them.").

**5.** Similarly, our prior conditional grant of Allen's motion to supplement the record on appeal with the Chadwell deposition cannot operate to cure Allen's failure to file the deposition or parts re-

of the deposition presented to the district court. We have determined from the record that those portions include pages 9–17 and 29–33 of the deposition.[6] We will consider only those portions of the Chadwell deposition, along with other materials whose consideration is not in dispute, in our review of the district court's summary judgment.

## IV

### A.

■■■ We turn now to Allen's appeal of the summary judgment. We review the district court's grant of summary judgment *de novo*. *Eaton v. Jarvis Prods. Corp.*, 965 F.2d 922, 925 (10th Cir.1992). All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party. *Anderson v. Dept. of Health & Human Services*, 907 F.2d 936, 946–47 (10th Cir.1990). Summary judgment is proper only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In diversity cases our role is to ascertain and apply the proper state law, here that of Utah, with the goal of insuring that the result obtained is the one that would have been reached in the state courts. *Adams–Arapahoe School Dist. No. 28–J v. GAF Corp.*, 959 F.2d 868, 870 (10th Cir.1992). We review *de novo* the district court's rulings with respect to state law. *Salve Regina College v. Russell*, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

### B.

The Supreme Court of Utah adopted the strict products liability doctrine as defined in Section 402A, Restatement (Second) of Torts in *Hahn v. Armco Steel Co.*, 601 P.2d 152, 158 (Utah 1972),[7] also holding there are two defenses to strict products liability: (1) misuse by the user or consumer, and (2) knowledge of the defect by the user or consumer who is aware of the danger and unreasonably proceeds to use the product, *i.e.*, assumption of risk. Both defenses must relate to the defective product and cannot be extended to cover conduct by the user or consumer unrelated to the product. *Id.* at 158.

In *Grundberg v. Upjohn Co.*, 813 P.2d 89, 91 (Utah 1991), the Utah Court noted that since *Hahn*, it had adhered to § 402A and at least one of its accompanying comments, citing *Mulherin v. Ingersoll–Rand Co.*, 628 P.2d 1301 (Utah 1981) (applying § 402A), and *Dowland v. Lyman Products for Shooters*, 642 P.2d 380, 381 n. 2 (Utah 1982) (applying comment g defining "defective condition" as a condition not contemplated by the ultimate consumer which will be unreasonably dangerous to him). *Grundberg* agreed with § 402A's comment k's basic proposition— "that there are some products that have dangers associated with their use even though they are used as intended," and the Utah Court agreed that the seller should not be strictly liable for unfortunate consequences of their use when such products (there a drug approved by the FDA) are properly prepared and marketed and distributed with appropriate warnings. 813 P.2d at 92.

Allen stresses the Utah decision in *Berry ex rel. Berry v. Beech Aircraft Corp.*, 717

lied on in the trial court. Only the portions of the deposition before the district court, as enumerated in the text, will be considered by us.

**6.** These pages are attached to instruments filed in the district court. *See* IV Supp.R.Doc. 149, Exh. F; I Supp.R.Doc. 190, Exh. C.

**7.** Section 402A provides in part:
402A. Special Liability of Seller of Product for Physical Harm to User or Consumer
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to

the ultimate user of consumer, or to his property, if
   (a) the seller is engaged in the business of selling such a product, and
   (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
   (a) the seller has exercised all possible care in the preparation and sale of his product, and
   (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
Restatement (Second) of Torts § 402A (1965).

P.2d 670 (Utah 1985), and its statements about the evolution of tort law to include the doctrine of strict liability which shifts the risk of loss from consumers to manufacturers. Allen also quotes from the Utah Court's statement in *Berry* that "the effect of strict liability has no doubt been to encourage safer manufacturing practices and product designs, thereby reducing the incidence of death and injury." 717 P.2d at 673. Allen relies on such statements in arguing that he was not required to prove that a commercially available, safer design existed at the time of manufacture. Allen also asserts that his proof opposing the summary judgment motion adequately showed that an alternative design existed at that time in any event. Reply Brief of Appellant at 5–6.

We turn now to Allen's specific claims of error in the grant of summary judgment for OMC and Wellcraft.

### C.

Allen makes three basic arguments for reversal: (1) the summary judgment was in error because Allen had presented competent proof of each element of his strict products liability claim—that the product was defective and unreasonably dangerous and that Allen was injured as a result of the defective condition—and the district court's requirement of proof of availability of a safer and feasible alternative was error; (2) even if proof of a safer and feasible alternative were required, Allen's proof was sufficient to establish a prima facie case and go to the jury; and (3) the district court erred in considering enhanced injury principles at all, although there was sufficient evidence of the elements of such a case in any event.

First, Allen says that the Utah Court in applying the strict liability principles of § 402A has not imposed added elements, such as proof of a safer alternative design, citing *Mulherin* and *Hahn*. Brief for Appellant at 11. He also cites our statement in *Karns v. Emerson Electric Co.*, 817 F.2d 1452, 1457, applying Oklahoma law, that:

While evidence bearing upon design alternatives and the "state of the art" in ·the industry may be relevant to determining whether a product is unreasonably dangerous, ... such evidence is not an essential element of the plaintiff's case. *Cf. Smith v. Minster Machine Co.*, 669 F.2d 628, 663 (10th Cir.1982) (compliance with industry standards does not constitute an absolute defense in a products liability action).

Allen also relies on *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987), and its statements that one reason for adopting strict liability was to exonerate a claimant from "what is frequently an insurmountable burden of proof," *id.* 412 N.W.2d at 78, and that a requirement that a plaintiff prove feasibility, as a part of his case on a claim of strict liability for design defect "weighs down the plaintiff with the onus to provide evidence of those matters which are usually within the knowledge of the manufacturer...." *Id.* 412 N.W.2d at 81.

We are not persuaded by Allen's arguments that the district judge erred in granting summary judgment for OMC and Wellcraft. Under § 402A principles we find *Pree v. Brunswick Corp.*, 983 F.2d 863 (8th Cir. 1993), and *Elliott v. Brunswick Corp.*, 903 F.2d 1505 (11th Cir.1990), *cert. denied*, 498 U.S. 1048, 111 S.Ct. 756, 112 L.Ed.2d 776 (1991), convincing. Both cases dealt with strict products liability claims and injuries, allegedly resulting from unguarded propellers on motorboats defectively designed.[8] In *Pree*, applying Missouri law, the Eighth Circuit affirmed judgment for the boat manufacturer on the ground that Pree failed, as a matter of law, to prove that the propeller without guards was defective in a way not understood by the ordinary consumer. 983 F.2d at 865. The ruling was grounded on the view that the evidence was insufficient to show that the manufacturer's engines were unreasonably dangerous and the trial court should have held as a matter of law that they were not defective. *Id.* at 867.

---

8. Pree claimed that a design defect in the boat's engines resulted in "enhanced injuries." 983 F.2d at 864. The enhanced injury theory for recovery was developed in *Larsen v. General Mo-*

*tors Corp.*, 391 F.2d 495 (8th Cir.1968). We applied the theory in *Tafoya v. Sears Roebuck & Co.*, 884 F.2d 1330 (10th Cir.1989), a riding lawnmower case, *inter alia*.

*Pree* followed *Elliott v. Brunswick Corp., supra.* There the Eleventh Circuit, applying Alabama law, stated:

Our task today is to determine whether a pleasure boat's unguarded propellers are dangerous beyond the expectations of the ordinary consumer. We conclude that they are not....

We hold that the dangers inherent in Mercury's product should have been apparent to, or within the contemplation of, Elliott. Thus, Mercury has not manufactured a defective product within the meaning of the Restatement (Second) of Torts.

903 F.2d at 1507.

We are persuaded to uphold the summary judgment in this case particularly because of the similarity of the circumstances here to those in *Elliott v. Brunswick Corp.* The Eleventh Circuit there reversed a judgment against Mercury Marine, the designer and manufacturer of an unguarded propeller for a planing pleasure craft. The claim was asserted under the Alabama test construing "defective" to mean that the product does not meet the reasonable expectations of an ordinary consumer. 903 F.2d at 1507. The court said: "[O]ur task today is to determine whether a pleasure boat's unguarded propellers are dangerous beyond the expectations of the ordinary consumer. We conclude that they are not." *Id.* The court stated further:

Elliott has demonstrated to our satisfaction that an experimental propeller guard, useful for some purposes, existed at the time of her accident. Elliott also argues, however, that we should hold Mercury for its failure to adapt and refine that design into one feasible for use on planing propeller craft. With this we do not agree.

*Id.* at 1508.

[A]lthough Elliott's experts promoted the use of propeller guards, they agreed that companies could not yet market them for general use. Both sets of experts, moreover, discussed the problems that these devices engender. Elliott's nearest approach to evidence on their utility was her videotape of the boat that struck her equipped with such a guard; Elliott's own experts, however, agreed that a satisfactory guard of this type was not available.

Elliott, therefore, failed to produce evidence that Mercury had access to a safe, practical design for propeller guards at the time of her accident.

*Id.* at 1509. The Eleventh Circuit held that when Elliott failed to demonstrate the existence of a safer, practical propeller guard for use on planing pleasure boats as required by Alabama law, she failed to establish a products liability or negligence claim. *Id.* at 1510.

In *Wheeler v. John Deere Co.,* 935 F.2d 1090 (10th Cir.1991), we upheld a strict products liability recovery for loss of an arm during use of a combine. Recovery was premised on the products liability law of Kansas and a claim of unreasonable dangerousness of the equipment. In discussing the recovery under § 402A and comment i principles (dangerousness to an extent beyond that contemplated by the ordinary consumer), we noted that "[a] manufacturer cannot be held liable for injuries which result from patent dangers, inherent in the product, completely within the cognition of a reasonable user, and incapable of being economically alleviated." *Id.* at 1104. For this principle we there cited, *inter alia, Elliott v. Brunswick Corp.* as holding "danger of rotating boat propeller sufficiently obvious and within cognition to preclude imposition of § 402A liability upon manufacturer of outboard motor." *Id.* at 1104.

As noted, the district judge here agreed with Allen that this is not an enhanced injury case. His Supplemental Ruling and Memorandum Decision, at pp. 8–9, relied on the holding of *Wilson v. Piper Aircraft Corp.,* 282 Or. 61, 577 P.2d 1322, 1327 (1978), which dealt with both a design defect claim for use of a standard aircraft engine in 1966 instead of a fuel injection engine and also a crashworthiness (or enhanced injury) claim based on use of allegedly defective shoulder harnesses and seat belt equipment. As to the design defect claim, the Oregon Court held:

Plaintiffs' allegations amount to a contention that an airplane furnished with a standard aircraft engine is defective because an engine of a different type, or with a different carburetor system, would be saf-

er in one particular. *It is not proper to submit such allegations to the jury unless the court is satisfied that there is evidence from which the jury could find the suggested alternatives are not only technically feasible but also practicable in terms of cost and the over-all design and operation of the product. It is part of the required proof that a design feature is a "defect" to present such evidence.*

577 P.2d at 1327 (emphasis added). The district judge here quoted the emphasized statement in *Wilson* in his Supplemental Ruling and Memorandum Decision of November 20, 1989, at 9.

■ We feel that the district judge did not err in his legal analysis within the framework of Utah strict liability principles. The decisions in *Elliott v. Brunswick Corp.* of the Eleventh Circuit and in *Pree v. Brunswick Corp.* of the Eighth Circuit were made under § 402A basic doctrine similar to that adopted in Utah in *Hahn, Inc. v. Armco Steel*, although the particular comment i of the Restatement applied in *Elliott* and *Pree* has not been adopted in Utah. Moreover *Elliott* and *Pree* involved the same design defect type of claim concerning an unguarded propeller before the court here. We are therefore persuaded that the district judge properly held that a showing of an alternative, safer design, practicable under the circumstances and available at the time of defendants' placing the boat and engine in the stream of commerce in about 1977–1978, was required.

We are mindful that in *Karns v. Emerson Electric Co.*, we discussed the requirement of such a showing and said evidence bearing on design alternatives and the state of the art "is not an essential element of the plaintiff's case," 817 F.2d at 1457, and affirmed the judgment based on Oklahoma law against the manufacturers of a hand-held trimming device. However, in *Meller v. Heil Co.*, 745 F.2d 1297 (10th Cir.1984), a strict product liability case involving Colorado law, we upheld the trial judge's admission of evidence of subsequent remedial measures to show the feasibility of alternative designs, stating: "The feasibility of alternative designs was a factor essential to [the plaintiff's] theory of the unreasonable danger the product posed."

*Id.* at 1300 n. 7. Now, in making our best effort to ascertain and apply Utah law, we conclude that the district judge did not err in holding that the plaintiff did bear the burden of showing that an alternative, safer design, practicable under the circumstances, was available at the time the boat and engine were sold.

### D.

■ Applying the principles discussed above, finally we must determine whether Allen raised a triable issue in response to the motion for summary judgment of OMC and Wellcraft. The crucial issue is whether, in the 1977–1978 time frame when the Wellcraft Marine boat and OMC engine were sold, there was an alternative, safer engine design, practicable under the circumstances, and whether the alternative design was feasible. Necessary proof would include evidence that alternatives are "technically feasible" for manufacturing a pleasure planing boat with a propeller guard. *See Wilson v. Piper Aircraft Corp.*, 282 Or. 61, 577 P.2d 1322, 1327 (1978).

On examination of the portions of the Chadwell deposition which we may properly consider (pp. 9–17 and 29–33), under the rationale of *Elliott* we must agree that the plaintiff Allen's showing was not sufficient to raise a triable issue of fact. It is true that portions of Chadwell's deposition showed that Chadwell had two ring cage guard prototypes, shown on picture Ex. 1, that he had designed (p. 13). Chadwell said "that design" (apparently referring to one of the types shown on Ex. 1) could be applied to a 70–horsepower, a 140–horsepower or all the way up to a 200–horsepower engine (p. 14). Chadwell said "the same shape and the same basic concept can be applied to the 140–horsepower engine in the particular boat that this case is pertaining to." (p. 15).

Chadwell testified he had not built a prototype for a 140–horsepower engine for the particular design he was testifying about. He had never tested that type of prototype on a 140–horsepower OMC lower unit (p. 15). He had tested the ring guard in some of his other designs on that horsepower. Chadwell said that he had just gone through two weeks

of testing with the Marine Corps (the deposition was taken on June 7, 1989) on one particular engine combination he apparently identified on the exhibit, and that "all the numbers and all the shapes and designs will transfer very easily and simply to the 140–horsepower engine that's involved in this case." (p. 15). Chadwell was asked when the first time was that the particular design under discussion for a protecting propeller device became commercially available. He replied: "Probably five months ago would be when the newest design that I would apply to that boat existed, but I have had other designs that would have fit that back—Back in the late Seventies I would have a guard for it, but this guard has changed so much and it's progressed." (p. 10).

The most pertinent testimony of Mr. Chadwell we find in his deposition was stated in the following discussion:

Q. ... Do you have an opinion as to whether this particular boat and engine should have been equipped with a propeller guard when it left the hands of Outboard Marine Corporation back in the early Seventies, and in the late Seventies?

A. I really don't. My opinion would be that I think boats should have guards on them; and that if it could have been, it should have been. My opinion is that if it could have had a guard on it, it should have.

. . . .

Q. What I'm trying to get at, Bryan, is whether you have an opinion as to whether this boat and engine specifically, the 140–horsepower stern drive unit, should have been equipped with some sort of people protecting propeller guard when it left the hands of Outboard Marine Corporation in the late Seventies.

A. My opinion is that if it could have had a guard, it should have had a guard on it. And if the boat was going to be used as a waterskiing boat, around people, that it

should have a guard on it. Is that—That's the best I can answer that.

Q. *Do you have an opinion as to whether there was a guard in existence at the time this 140–horsepower stern drive left the hands of Outboard Marine Corporation that could have been equipped on that particular stern drive unit?*

A. *I didn't have one for that horsepower at this time, no. So all I could say is that at that time I couldn't put one on it.*

Q. *Were you aware of any guards in existence back in the late Seventies when this guard left the hands of Outboard Marine Corporation; this lower unit left the hands of Outboard Marine Corporation?*

A. *For that particular lower unit, as far as I was aware of, there were no guards for that at that time.*

Chadwell deposition at 11–12 (emphasis added).[9]

The mere existence of prototypes does not obligate manufacturers to implement such devices in their products. *Elliott v. Brunswick Corp.,* 903 F.2d at 1508 (evidence of "an experimental propeller guard, useful for some purposes" is not a basis for liability for "failure to adapt and refine that design into one feasible for use on planing propeller craft"). *See also Gates v. Ford Motor Co.,* 494 F.2d 458, 460 (10th Cir.1974) ("the rule is well settled that a manufacturer does not have a legal duty to produce a product incorporating only features representing the ultimate in safety.... To recover, appellant necessarily must establish that the [product] was defective when manufactured, that such defect rendered the [product] unsafe for its intended use, and that the defective [product] proximately caused the deceased's injuries."). Instead, "in showing that [the product] can be made safer through the use of devices, a plaintiff must show that the devices exist and are not merely specula-

---

**9.** In his brief, Allen maintains that Mr. Chadwell testified in other portions of his deposition, *e.g.* pp. 24–25, on the commercial availability of alternative guards, and that he believed the Donald Balius guard was in existence back when the lower unit left the hands of OMC and could be bought. Even if those pages of the deposition

had been presented properly below, we are not persuaded that Mr. Chadwell's testimony presented a triable issue. There was no showing of an alternative which was technically feasible and practicable in terms of cost and the overall design and operation of the product. *Wilson v. Piper Aircraft Corp.,* 577 P.2d at 1327.

tive." *Adams v. Fuqua Industries, Inc.*, 820 F.2d 271, 275 (8th Cir.1987).

In sum, OMC and Wellcraft as parties seeking summary judgment bore the initial responsibility of informing the district court of the basis for their motion and of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, which they believed demonstrated the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Here the record shows that OMC and Wellcraft indicated the absence of evidence that there was a feasible, safer alternative design for a propeller guard in the 1977–78 period as the critical issue. I R.Doc. 149, Motion for Summary Judgment at 1–2; IV Supp.R.Doc. 149, Memorandum of Points and Authorities at 3–11, 15–20, 22, 24–25, 28–30. Where the nonmoving party, Allen in this instance, will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in this manner. *Celotex, id.* at 324, 106 S.Ct. at 2553.

The basis of the motion having been properly identified by the moving party, Rule 56(e) Fed.R.Civ.P. required the nonmoving party, Allen, to go beyond the pleadings and by his own affidavits, or by depositions, answers to interrogatories, etc. and designate specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. We have considered the matters relied on by Allen, including the portions of the Chadwell deposition cited earlier (pp. 9–17 and 29–33), and conclude that there was an insufficient showing of an issue for trial, *i.e.* insufficient evidence favoring Allen, the nonmoving party, for a jury to return a verdict for him. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

### V

For the foregoing reasons, in No. 90–4004 the district court's summary judgment in favor of OMC and Wellcraft is **AFFIRMED.** In No. 90–4199, the order denying the motion for leave to file the Chadwell deposition is **AFFIRMED.**