FILED
United States Court of Appeals
Tenth Circuit

April 22, 2021

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

NATHAN PETERSEN,

    Plaintiff - Appellant,

v.

THE RAYMOND CORPORATION,

    Defendant - Appellee.

No. 20-4026

_____

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:14-CV-00894-RJS)**
_____

Michael J. Warshauer of Warshauer Law Group, P.C., Atlanta, Georgia (David A. Cutt of Eisenberg Cutt Kendell & Olson, Salt Lake City, Utah, with him on the briefs), for Plaintiff-Appellant.

Francis H. LoCoco of Husch Blackwell LLP, Milwaukee, Wisconsin (Rick L. Rose and Kristine M. Larsen, of Ray Quinney & Nebeker, Salt Lake City, Utah, with him on the brief), for Defendant-Appellee.
_____

Before **TYMKOVICH**, Chief Judge, **BALDOCK**, and **CARSON**, Circuit Judges.
_____

**CARSON**, Circuit Judge.
_____

    The district court serves as a gatekeeper, shutting the door on unreliable expert testimony. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999). And we afford district courts "considerable leeway" in deciding when the door should be

closed.  Id.  Plaintiff Nathan Petersen ("Plaintiff") argues the district court impermissibly closed the door on the strict products liability claim he brought against Defendant Raymond Corporation ("Raymond") alleging it defectively manufactured a forklift.  In support of his claim he sought to offer expert testimony that the forklift would be safer if it had "a door" on it.  The district court found the expert's testimony unreliable and excluded it.  It then granted a related motion for summary judgment in Raymond's favor.  Plaintiff appeals.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Plaintiff injured himself while operating the Raymond Model 4200 stand-up counterbalance lift truck ("Raymond forklift").  The Raymond forklift has an open compartment.  So it does not fully enclose the operator's lower extremities.  When Plaintiff lost control of the Raymond forklift, his left leg slid out of the open compartment and he crushed it against warehouse racking.

Plaintiff sued the Raymond forklift manufacturer—Raymond—alleging strict liability.  Plaintiff asserted the Raymond forklift's open compartment made it defective.  And he tried to offer expert testimony from Plaintiff's expert in support of that assertion.  Plaintiff's expert concluded that adding a door could cure this deficiency.  But Plaintiff's expert did not commit to the specific type of door he believed necessary.  Instead, he offered that any number of doors would have worked.

Raymond moved to exclude Plaintiff's expert's testimony. It then moved for summary judgment, arguing that Plaintiff could not meet his burden without expert testimony. Before ruling on these motions, the district court reviewed Plaintiff's expert's 76-page report and ordered supplemental cross briefing on the admissibility of his opinions. It also held three evidentiary hearings where Plaintiff's expert testified about his opinions.

After review, the district court issued an extensive oral ruling excluding Plaintiff's expert's testimony that, in general, a door presented a safer, alternative design option. It reasoned that although Plaintiff's expert was qualified to offer this opinion, he failed to offer a *specific* safer, alternative design and thus failed to reliably support his opinion. Because Plaintiff lacked expert testimony that a safer, alternative design existed at the time of his injuries, he could not meet his burden for a Utah strict liability claim. So the district court granted summary judgment in Raymond's favor. Plaintiff appeals.

## II.

The district court delivered its decision excluding Plaintiff's expert in an oral ruling that lasted nearly two hours. The ruling lacked some precision, making appellate review more difficult, but we see no need to remand for clarification.

We review a district court's decision to exclude testimony for abuse of discretion. See Bitler v. A.O. Smith Corp., 400 F.3d 1227, 1232 (10th Cir. 2005). So we will not "disturb a district court's ruling absent our conviction that it is arbitrary,

capricious, whimsical, manifestly unreasonable, or clearly erroneous." Id. (citing Goebel v. Denver and Rio Grande W. R.R. Co., 346 F.3d 987, 990 (10th Cir. 2003)).

We review de novo a district court's grant of summary judgment. Allen v. Minnstar, Inc., 8 F.3d 1470, 1476 (10th Cir. 1993). The district court must grant summary judgment only if the "moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Because this case arises out of diversity, we apply Utah law. Allen, 8 F.3d at 1476.

III.

A.

In determining whether an expert may testify under Federal Rule of Evidence 702, the district court must first consider whether the expert's proffered testimony has "a reliable basis in the knowledge and experience of his discipline." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592 (1993). When making this determination, the district court should examine "whether the reasoning or methodology underlying the testimony is scientifically valid . . . ." Id. at 592–93.

The district court excluded Plaintiff's expert's opinions for two reasons. First, Plaintiff's expert failed to definitively offer a specific safer, alternative design. Second, he failed to reliably support his opinion that *any* door would be a safer, alternative design. We will address each reason in turn. We conclude the district court did not abuse its discretion in excluding Plaintiff's expert's opinions, and therefore affirm its grant of summary judgment in Raymond's favor.

4

Under Utah law, a plaintiff bringing a strict products liability claim must show that at the time of the injury an "alternative, safer design, practicable under the circumstances" existed.  Allen, 8 F.3d at 1479.  Plaintiff argues the district court unlawfully found that Utah law limits a plaintiff to offering only one alternative design.  But the district court did not make such a finding.  In fact the district court explicitly referenced that sometimes "multiple design options are warranted."  ROA at 1932.

The district court found that Plaintiff's expert failed to commit to *any definitive* feasible design alternative.[1]  And it rightfully excluded his testimony on that basis.  The Fifth Circuit upheld a district court's exclusion of expert testimony for the same reason in Guy v. Crown Equip. Corp.  394 F.3d 320, 323 (5th Cir. 2004).[2]  In Guy, a plaintiff operating a forklift with an open compartment lost control, and her left leg came out of the compartment and she crushed it.  Id.  The

---

[1] The district court made multiple comments to this effect when issuing the oral ruling.  ROA at 1917, 1918, 1919–1920, 1921 & 1925–1926.  But on whole the message remained the same, the district court believed Plaintiff's counsel took "the unworkable and unfair position that they need not select a *specific* safer alternative design to enable Raymond, the jury, and this court to compare the open back design they criticize with the proposed alternative." ROA at 1894 (emphasis added).

[2] In Guy, the plaintiff brought strict liability claims under the Mississippi Products Liability Act ("MPLA").  394 F.3d at 322–23.  The MPLA requires the plaintiff to show the existence of "a feasible design alternative that would have to a reasonable probability prevented the harm."  MISS. CODE ANN. § 11-1-63(f)(ii).  Although the MPLA defines "feasible design alternative" and Utah does not, the MPLA's requirement is sufficiently analogous to Utah's strict liability requirement that a plaintiff show a safer, alternative design existed at the time of the plaintiff's injury.

plaintiff brought a strict liability claim against the forklift manufacturer. Id. In support of her claim she sought to have an expert testify that the forklift was defective, in part, because it lacked "an operator restraint (similar to a seat belt)[.]" Id. As a design alternative, the expert advocated use of a "restraining device" but "never presented a specific design." Id. at 327. The district court excluded the expert's testimony because the expert "had not presented any definitive theory, opinion or . . . feasible design alternative . . . that could be tested . . . ." Id. at 323. The Fifth Circuit held the district court acted within its discretion in excluding the expert's testimony because although the expert suggested devices like those already on the market would suffice, "he never submitted a complete 'end product.'" Id. at 327. "'The proper methodology for proposing alternative designs includes more than just conceptualizing possibilities[,]'" so the expert's failure to offer a specific alternative rendered his testimony inadmissible. Id. (quoting Watkins v. Telsmith, Inc., 121 F.3d 984, 992 (5th Cir. 1997)).

Like the Guy plaintiff, Plaintiff here operated a forklift with an open compartment. He lost control, his left leg came out of the compartment and he crushed it. Plaintiff's expert, like the Guy expert, never presented a definitive safer, alternative design. In fact, he made a point not to commit to any specific design. He only advocated the use of "a door" and offered conceptualized possibilities.[3] The

---

[3] In his expert report, Berry offered as his alternative design that—

The lift truck could have been provided with several designs of doors including, but not limited to, a latching rear door, a spring loaded door,

district court here, like the district court in <u>Guy</u>, excluded expert testimony for failure

to present any testable definitive design. The district court did not limit Plaintiff's

expert to submitting only one design. But it did require that Plaintiff's expert offer *at*

*least* one definitive safer, alternative design. Without a definitive design, neither

Plaintiff's expert nor the district court could meaningfully compare any proffered

design with the existing design. And neither could a jury. For this reason, the

a magnet controlled door, and an interlocked door to provide further protection to operators from additional hazards. Properly designed doors that exist in the marketplace right now, or which could be easily manufactured (see the Elrod door) would have a negligible effect on the maintenance of the machine. The door should have been constructed out of a suitable material that would withstand the forces of impact generated during collisions, intrusions, tipovers and off-the-dock accidents. (Intrusion protection is not the primary purpose of the door needed to protect Mr. Peterson so while intrusion protection is helpful, it is not essential to improve the safety of the machine so long as the door will assist the operator in keeping his leg inside the operator's compartment.) The cost of providing such a rear door would be insignificant relative to the cost of the forklift. The cost of adding a latching rear guard to the Raymond 420-C50QM would have cost at most $250 if designed and installed at the time of manufacture rather than as an add-on.

Berry did not commit to any type of door, material of door, cost of door. He also does not specify how a manufacturer would add "a door" to the Raymond forklift despite admitting that to put a door on a forklift you would need to know where the hinges went. He did admit, however, that "rugged hinges [were] available for use." But again, he never stated that he would use rugged hinges here. He only offers that rugged hinges exist. He did not specify the measurements for "a door" despite admitting that one would have to know whether the door spanned the entrance. He did not discuss how a manufacturer may hook the door up to the forklift's electrical and computer systems despite admitting that someone would need to know whether such a hookup was possible. He also said he had not designed a specific door for the Raymond forklift. Defendant's counsel asked Berry in a hearing, "[d]o you have any engineering drawings to show us of your design of a door for [the Raymond forklift]?" Berry responded, "[n]o."

7

district court did not abuse its discretion in excluding Plaintiff's expert's testimony for failure to offer any specific safer, alternative design.

B.

Plaintiff argues the district court's misunderstanding of Utah law—on how many alternative designs a plaintiff can advance—permeated its ruling that Plaintiff's expert did not offer a scientifically reliable expert opinion. Not true. Again, the true issue is not numerosity, it is design specificity. Because Plaintiff's expert offered no specific design, he did not test any specific design on the Raymond forklift, nor did he cite testing done by others of a specific design on the Raymond forklift.

Plaintiff makes two assertions, neither of which advances the ball. First, Plaintiff asserts Plaintiff's expert did not have to test "a door" on the Raymond forklift himself. Although Rule 702 did not require Plaintiff's expert to do the testing himself, we have upheld the exclusion of an expert's testimony for lack of sufficient methodology and reasoning where the expert relied on published material rather than testing his theory directly. See United States v. Gabaldon, 389 F.3d 1090, 1099 (10th Cir. 2004). And other circuits have excluded expert testimony on that same basis in forklift cases specifically. See Brown v. Raymond Corp., 432 F.3d 640, 647–48 (6th Cir. 2005) (concluding that an expert witness's failure to provide evidence of testing on his own alternative design justified the district court's ruling to exclude testimony); Dhillon v. Crown Controls Corp., 269 F.3d 865, 869–70 (7th Cir. 2001) ("We could identify a number of problems with the testimony these witnesses were prepared to offer, but the most glaring among them is the lack of testing, or

8

more generally the failure to take any steps that would show professional rigor in the assessment of alternative designs[.]"). We recognize "testing is not necessary in all instances to establish reliability under Daubert . . . ." Bitler, 400 F.3d at 1236. But the district court did not exclude Plaintiff's expert's opinion just because he did not test any door on the Raymond forklift himself.

Second, Plaintiff asserts that disagreement between experts does not warrant the exclusion of either expert's testimony. See Feliciano-Hill v. Principi, 439 F.3d 18, 25 (1st Cir. 2006) ("The mere fact that two experts disagree is not grounds for excluding one's testimony."). Plaintiff argues that despite Raymond's disagreement with Plaintiff's expert's opinions, Plaintiff's expert did the requisite analysis and testing for a reliable and thus admissible opinion. But the district court did not exclude Plaintiff's expert's testimony because experts could differ on whether adding a door would on whole be a safer alternative design. The district court found Plaintiff's expert's opinions unreliable because

> Plaintiff's expert fail[ed] to say how he considered [the various doors listed in his report], fail[ed] to identify any scientific or technical analysis he applied to each, or any of them, and offer[ed] no scientific support for his naked conclusion that each or any of them is safer than the Raymond design.

ROA at 1919. For a jury to find an alternative design "safer" than the Raymond design, a comparative analysis must be possible. See Restatement (Third) of Torts, Prod. Liab. § 2 cmt. d (1997) ("Assessment of a product design in most instances requires a comparison between an alternative design and the product design that caused the injury . . . ."). And so Plaintiff had to offer at least one *definitive*

9

competing design. See Allen, 8 F.3d at 1480–81 ("[I]n showing that the product can be made safer through the use of devices, a plaintiff must show that the devices exist and are not merely speculative." (internal quotation marks and citation omitted)). A jury cannot compare the existing design to, essentially, anything and everything else. Plaintiff's expert did not commit to any door design. True, Plaintiff's expert included photos of some doors that exist in the real world in his expert report. But the district court did not abuse its discretion in concluding that existence of these doors in the world, with nothing more, was insufficient. See Guy, 394 F.3d at 327; Brown, 432 F.3d at 647–48; Dhillon, 269 F.3d at 869–70.

Without commitment to any design, Plaintiff's expert offered only sweeping opinions about doors in general. Plaintiff's expert argued that he could put a door on the Raymond forklift, but he had never done so. He opined that a manufacturer should construct a door "out of a suitable material that would withstand the force of impact" but he did not say what constituted a suitable material. He contended that the "cost of providing such a rear door would be insignificant relative to the cost of the forklift" but he did not offer any numerical values aside from a projection for the cost of adding a latching rear door. But again, he never committed to a latching rear guard as an alternative design. So he offered this valuation only as a general example.

Plaintiff's expert also cited a 1991 study showing egress time only increased minimally when a manufacturer added a door to a forklift. But Plaintiff's expert offered no evidence of which forklifts the 1991 study tested, under what

10

circumstances the study tested the forklifts, or what potential consequences exist because of the minimal increase in egress time. Plaintiff's expert also cites a report showing egress time diminished where manufacturers added a spring loaded door to a forklift. Again, this data is not apparently specific to adding a spring loaded door to the Raymond forklift and Plaintiff's expert fails to explain the circumstances under which the study tested the spring-loaded door. Even so, Plaintiff's expert never committed to a spring loaded door as an alternative design.

Other circuits have found expert testimony unreliable where the expert failed to test a proposed alternative design on the specific forklift at issue. See Dhillon, 269 F.3d at 869–70 (holding that the experts' methodology unreliable because "[a]lthough both experts wanted to assert that the truck design was defective because it did not include a rear door, neither expert ha[d] actually designed a model of a forklift truck with a rear door." And neither "performed any tests of such a model to see if it is both economically feasible and just as safe or safer than the model without the door."); Lawrence v. Raymond Corp., 501 F.App'x 515, 518–19 (6th Cir. 2012) (unpublished) (holding that because Plaintiff's expert only tested his door design once and did not test it on the Raymond forklift, his test did not address the specific issues with his alternative design, "such as whether the latching-door design [was] compatible with the Raymond forklift; the impact a latching door would have on maintaining a Raymond forklift; or what effect, if any, a latching door would have on the forklift's price.").

The district court here permissibly found Plaintiff's expert's testimony unreliable because on this record, we cannot know what impact any alternative design may have on the Raymond forklift related to safety, control, performance, or price. And that is the problem. If Plaintiff's expert wanted to advance multiple options, so be it. But however many options he advanced, they had to be designs supported by reliable methodology and capable of comparison. By not committing, Plaintiff's expert made it impossible to compare the benefits and risks of any phantom design made of unknown materials, attached in unknown ways, with unknown safety and performance effects, at an unknown cost, to the Raymond design.[4] And as the district court properly noted, Utah law necessarily requires a comparative analysis to determine whether a safer, alternative design, practicable under the circumstances existed at the time of Plaintiff's injury. So the district court did not abuse its discretion in excluding Plaintiff's expert's testimony.

Because the district court permissibly excluded Plaintiff's expert's testimony, Plaintiff did not prove an essential element of his claim—that a safer, feasible alternative design existed at the time of his injury. See Wankier v. Crown Equip.

---

[4] Plaintiff tries to get around this issue on appeal by arguing that Raymond offers an optional spring-loaded door which a consumer may add to the Raymond forklift. So, Plaintiff argues, the Raymond door exists in real life and Raymond can fit the Raymond door to the Raymond forklift—problem solved. And although Plaintiff may wish that it committed to the Raymond optional door before the district court, Plaintiff cannot rewrite history. When counsel asked Berry in a hearing whether the Raymond option door was his alternative design, Berry responded that he would suggest a different type of door. But again, Berry did not commit to a definitive design or offer any evidence of the costs or benefits of adding that definitive design to the Raymond forklift.

12

Corp., 353 F.3d 862, 866–68 (10th Cir. 2003) (holding that under Utah law, a plaintiff must prove a safer, feasible alternative design). Accordingly, the district court properly granted summary judgment in Raymond's favor.

AFFIRMED.