James R. FARTHING, Plaintiff–
Appellant,

v.

CITY OF SHAWNEE, KANSAS,
Defendant–Appellee.

No. 93–3346.

United States Court of Appeals,
Tenth Circuit.

Nov. 8, 1994.

Ronald L. Schneider (Jerry K. Levy with him, on the briefs), Lawrence, KS, for plaintiff-appellant.

Michael K. Seck of Fisher, Patterson, Sayler & Smith, Overland Park, KS, for defendant-appellee.

Before BRORBY, SETH and LAY,* Circuit Judges.

BRORBY, Circuit Judge.

Plaintiff-appellant James R. Farthing appeals an order of the district court granting defendant-appellee the City of Shawnee's motion for summary judgment. The district court concluded Mr. Farthing did not possess a protected property interest in continued employment with the City and therefore the City's denial of his request for a post-termination hearing did not deprive him of his right to procedural due process. Mr. Farthing subsequently filed a timely notice of appeal,[1] which properly invoked our

---

* The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. The appellee filed a motion for a summary dismissal of the appeal claiming the appellant's notice of appeal was untimely. Because the timely filing of a notice of appeal is "mandatory and jurisdictional," *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 203, 108 S.Ct. 1717, 1722, 100 L.Ed.2d 178 (1988), we must determine, as a

threshold matter, whether the notice of appeal was timely before evaluating the merits of the appeal. *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379–80, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1981) (once an appellate court determines a notice of appeal is untimely, the court "lacks discretion" to review the merits).

Fed.R.App.P. 4(a)(1) requires a litigant to file a notice of appeal with the clerk of the district court within thirty days of the entry of the order

jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

## BACKGROUND

The following material facts are undisputed. Mr. Farthing was employed by the City of Shawnee ("the City") as the Fire Chief for approximately eight years until he was terminated by Gary Montague, the city manager, in September of 1990. As the city manager, Mr. Montague was Mr. Farthing's direct supervisor. Under § 2.08.040(3) of the Shawnee Municipal Code ("the Code"), Mr. Montague was·empowered to hire and terminate the employment of certain municipal employees, including Mr. Farthing, without approval of the City Council. Under § 2.12.040 of the Code, Mr. Farthing was considered a "classified employee," which meant the terms of his employment were governed by applicable rules and regulations of the City, including its personnel manual.

Mr. Farthing and Mr. Montague had what the district court categorized as a "stormy" relationship from 1988 until his termination in 1990. On September 17, 1990, Mr. Montague gave Mr. Farthing notice he was being terminated. Although Mr. Farthing and Mr. Montague met the day after Mr. Farthing's termination to discuss the terms of severance, it is unclear whether Mr. Montague explained to Mr. Farthing the reason or reasons, if any, for his termination. Mr. Farthing subsequently requested a post-termination hearing, but it was denied. He was, however, afforded a "name clearing hearing" that provided him with an opportunity to respond to certain allegations he felt may have negatively affected his reputation.[2]

Mr. Farthing thereafter initiated this suit in federal district court asserting a denial of procedural due process under 42 U.S.C. § 1983 and the Fourteenth Amendment, and a pendent, or supplemental, state law claim for wrongful termination. In granting the City's motion for summary judgment, the district court concluded although this was "a close case," Mr. Farthing failed to establish he had a protected property interest in continued employment with the City as a matter of law, and therefore, he was not entitled to procedural due process upon his termination. The district court also concluded Mr. Farthing could not maintain his wrongful termination claim because he was an at-will employee. On appeal, Mr. Farthing's sole claim is the district court erred in finding he did not have a protected property interest in his continued employment with the City as the Fire Chief.[3]

## DISCUSSION

We review a district court's order granting a motion for summary judgment *de novo*, applying the same legal standard utilized by the district court. *See Allen v. Minnstar, Inc.*, 8 F.3d 1470, 1476 (10th Cir. 1993); *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990). Under Fed.R.Civ.P. 56(c), summary judgment is proper only if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law. *See also Allen*, 8 F.3d at 1476. A "material" fact is one

sought to be appealed. Fed.R.App.P. 4(a)(5), however, vests the district court with discretion, upon a showing of either good cause or excusable neglect, to extend the time for filing a notice of appeal up to an additional thirty days. In the present case, although the notice of appeal was in fact filed one day late, the district court found the untimeliness was attributable to excusable neglect and granted an extension of time under Rule 4(a)(5). As a result, the notice of appeal is timely. Therefore, we deny appellee's motion to dismiss the appeal.

2. Mr. Farthing did not pursue a claim that these allegations made by the City, through its employees, deprived him of a liberty interest without

due process of law. Presumably, this is because he was afforded the "name clearing hearing." In any event, counsel for both parties agree this "name clearing hearing" is not relevant to Mr. Farthing's claim he was deprived of a property interest in his employment without due process of law.

3. Mr. Farthing has not appealed the district court's ruling on the state law wrongful termination claim. In the absence of any argument or authority on a particular issue, we deem the matter abandoned and do not address it on appeal. *See Stahl v. Sun Microsystems, Inc.*, 19 F.3d 533, 537 n. 1 (10th Cir.1994).

"that might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and a "genuine" issue is one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

This case was brought pursuant to § 1983 and was therefore within the district court's federal question jurisdiction under 28 U.S.C. § 1331; however, the issue of whether Mr. Farthing possessed a protected property interest must be determined by reference to state law. *See Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Koopman v. Water Dist. No. 1 of Johnson County,* 972 F.2d 1160, 1164 (10th Cir.1992). We review the district court's application and interpretation of state law *de novo. See Quinlan v. Koch Oil Co.,* 25 F.3d 936, 939 (10th Cir.1994) (citing *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991)). With these principles in mind, we now turn to the merits of Mr. Farthing's appeal.

### I.

The Due Process clause of the Fourteenth Amendment does not prohibit the government from depriving an individual of "life, liberty, or property"; it protects against governmental deprivations of life, liberty, or property "without due process of law." U.S. Const. amend. XIV; *see Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979). In determining whether an individual has been deprived of his right to procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of process. *See, e.g., Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) ("[O]nce it is determined that the due process Clause applies, 'the question remains what process is due.'") (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). In light of this framework, we turn to the threshold issue of whether Mr.

Farthing possessed a protected property interest. *See Graham v. City of Oklahoma City,* 859 F.2d 142, 144 (10th Cir.1988) (*per curiam* ); *accord Conaway v. Smith,* 853 F.2d 789, 793 (10th Cir.1988) (*per curiam* ). The district court concluded Mr. Farthing did not possess a property interest in continued employment with the City. We agree.

The Constitution does not create or define the contours of "liberty" or "property," the "broad and majestic terms" enshrined in the Fourteenth Amendment. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). Rather, property interests, which are the subject of the present litigation, "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Roth,* 408 U.S. at 577, 92 S.Ct. ·at 2709; *see also Paul v. Davis,* 424 U.S. 693, 710, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976) ("[Liberty and property] interests attain ... constitutional status by virtue of the fact that they have been initially recognized and protected by state law").

In the context of a public employee like Mr. Farthing, the touchstone is whether, under state law, the employee has "a legitimate claim of entitlement" in continued employment, as opposed to a "unilateral expectation" or "an abstract need or desire" for it. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709; *Koopman,* 972 F.2d at 1164. A legitimate claim of entitlement may be grounded in various sources of state law, including "state statutes, local ordinances, established rules, or mutually explicit understandings." *Dickeson v. Quarberg,* 844 F.2d 1435, 1437 (10th Cir.1988); *see also Carnes v. Parker,* 922 F.2d 1506, 1509 (10th Cir.1991). We must therefore turn our attention to Kansas law to determine whether Mr. Farthing possessed a protected property interest.

### II.

#### A.

In *Pilcher v. Board of County Commissioners,* 14 Kan.App.2d 206, 787 P.2d 1204 (1990), the Court of Appeals of Kansas

summarized Kansas law regarding the existence *vel non* of a property interest in public employment as follows:

> The problem with [appellant's] due process claim is that, as an employee-at-will, she has no vested property interest in her job which is entitled to protection by the Fourteenth Amendment. No property interest in a job exists unless it is created by statute, ordinance, or implied or written contracts. *Stoldt v. City of Toronto* [234 Kan. 957], 678 P.2d 153 (Kan.1984).

*Pilcher*, 787 P.2d at 1208. The "unless" language quoted above makes it apparent that under Kansas law, public employment is presumptively at-will. *See Stoldt*, 678 P.2d at 160 ("the tenure of any office not provided for in the [state] constitution may be declared by statute, and when not so declared such office shall be held at the pleasure of the appointing authority."); *accord Riddle v. City of Ottawa*, 12 Kan.App.2d 714, 754 P.2d 465, 468–69 (1988); *Elam v. Williams*, 753 F.Supp. 1530, 1536 (D.Kan.1990) (interpreting Kansas law), *aff'd without opinion*, 953 F.2d 1391 (10th Cir.1992). In the absence of any evidence to the contrary, a public employee terminable at-will does not possess a protected property interest under Kansas law for purposes of procedural due process analysis. *See Stoldt*, 678 P.2d at 160 (finding an at-will municipal employee "has no constitutionally protected property interest in his [employment].").

■ In those situations, however, where state law restricts a government employer's removal power by requiring some type of "cause" or "fault" before taking any adverse action against the employee, then the Kansas Supreme Court has declared the employee does possess a protected property interest. As a result, the requirements of due process are applicable and the employee must, at a minimum, receive notice and an opportunity to be heard. *See Kosik v. Cloud County Community College*, 250 Kan. 507, 827 P.2d 59, 63 (citing Kansas Supreme Court cases), *cert. denied*, —— U.S. ——, 113 S.Ct. 195, 121 L.Ed.2d 138 (1992); *cf. Perry v. Sindermann*, 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972) (noting that if a public college teacher was terminable only for cause, then the teacher would possess a protected property interest); *Workman v. Jordan*, 32 F.3d 475, 479 (10th Cir. 1994) (for cause employment creates a protected property interest under Colorado law).

■ In sum, then, the Kansas Supreme Court has clearly held an at-will employee does not possess a legitimate claim of entitlement in continued employment. The absence of a protected property interest compels the conclusion that the procedural due process safeguards are inapplicable. *See Conaway*, 853 F.2d at 793 (interpreting Kansas law); *Stoldt*, 678 P.2d at 160. In contrast, where the employee is terminable only for cause, the Kansas Supreme Court recognizes the employee has a property interest in continued employment under state law. Under those circumstances, the Constitution requires that some level of due process be afforded in order to effectuate a deprivation of this interest. *See Conaway*, 853 F.2d at 793; *Gorham v. City of Kansas City, Kansas*, 225 Kan. 369, 590 P.2d 1051, 1055 (1979). Accordingly, it is apparent that the dispositive issue in this appeal is whether Mr. Farthing was terminable only for cause.

### B.

In support of his claim that he had a protected property interest, Mr. Farthing relies on various municipal ordinances, the City's personnel manual, and the testimony of Mr. Montague. He first argues a reasonable construction of the municipal ordinances expressly limits the city manager's ability to terminate him absent a showing of cause. Even if the ordinances do not limit the city manager's power of removal to cause, he nonetheless contends he had an implied contract with the City that made him terminable only for cause. We address each of these arguments in turn.

### 1.

■ Mr. Farthing's first argument is the applicable municipal ordinances pertaining to his employment restrict the city manager's power to remove him only for "cause." The City disputes this position, asserting that while the ordinances restrict the city manager's appointment power, they do not limit the

city manager's removal power. We must begin our analysis with the text of the ordinances. *Cf. Central Trust Co. v. Official Creditors' Comm. of Geiger Enters., Inc.,* 454 U.S. 354, 359–60, 102 S.Ct. 695, 698, 70 L.Ed.2d 542 (1982) (*per curiam* ) (noting that statutory interpretation must commence with the language of the statute).

Section 2.08.010 of the Code vests the "administration of the city's business" in an individual known as the city manager. Section 2.08.040 defines and prescribes the city manager's "duties and functions," and it provides, in pertinent part:

> 3. [The city manager] shall appoint and remove all heads of departments and all subordinate officers and employees of the city;
> 4. All appointments shall be made upon merit and fitness alone.

Section 2.12.040 of the Code states "[a]ppointment to and employment in positions in the classified service shall" comply with any and all applicable rules and regulations, including the personnel manual. Section 1.7(a) of the personnel manual states that "[n]o person in the classified service, or seeking admission thereto, shall be appointed, promoted, advanced, demoted, or removed on any basis or for any reason other than qualification, merit, and fitness for the service or lack thereof."

The district court analyzed the interplay of these provisions as follows. While § 2.08.040(3)–(4) restricts the city manager's appointment power—he "shall" appoint on the basis of "merit and fitness alone"—it placed no such limitation on the city manager's removal power. In addition, § 2.12.040 only adopts the personnel manual for matters involving "[a]ppointment to and employment in" the classified service, and not on matters relating to removal. Moreover, the district court termed it "significant" that § 2.08.040(3) "use[s] the term 'removal' when referring to the City Manager's power to terminate [appointees]" but that "the term 'removal' is not used when adopting the Personnel Manual by reference in § 2.12.040." Finally, the district court bolstered its conclusion that the city manager's removal power was not circumscribed because under Kansas law, *e.g., Stoldt,* 678 P.2d at 160, municipal employment is presumptively at-will.

■ Mr. Farthing asserts the district court erroneously concluded the ordinances were unambiguous. He asserts the ordinances were not clear and we must therefore give them a "reasonable, rational, sensible, and intelligent construction," *Mendenhall v. Roberts,* 17 Kan.App.2d 34, 831 P.2d 568, 574 (1992), namely, that he was removable only for cause. The City, however, disputes Mr. Farthing's attempt to characterize these ordinances as ambiguous, and asserts the district court correctly concluded they were clear. Keeping in mind our function in applying state law is limited to "ascertain[ing] and apply[ing] the proper state law, here that of [Kansas], with the goal of insuring that the result obtained is the one that would have been reached in the state courts," *Allen,* 8 F.3d at 1476, we conclude the ordinances are in fact clear on their face.

■ Mr. Farthing's primary argument is that § 2.12.040 incorporates § 1.7(a) of the personnel manual, which speaks to limitations on the city manager's removal power. The district court rejected this argument, concluding that § 2.12.040 was silent with respect to removal. Mr. Farthing contends the "employment in" language in § 2.12.040 "reasonably draws in the termination issue." The City, however, asserts that "[h]ad [it] intended to include removal within the coverage of the phrase in question, it would have been included." We agree. It is apparent from § 2.12.040(3) that the drafters of the Code were capable of distinguishing between the power to appoint and the power to remove. While the personnel manual does in fact refer to limitations on the city manager's removal power, we cannot agree that § 2.12.040 adopts this limitation as it does not speak to the removal issue. Rather, it deals with the manner in which the "appointment to and employment in" a classified service position is to be made, and not limitations on the city manager's removal power. Therefore, we reject Mr. Farthing's argument.

Moreover, our conclusion is supported by the Court of Appeals of Kansas' decision in

*Riddle,* where the court concluded a public safety officer, employed by a municipal government under a city manager form of government, did not possess a constitutionally protected property interest in his employment because the city manager's power of removal was unlimited. *Riddle,* 754 P.2d at 468–69. *Riddle* is indistinguishable in any material way from the case at bar and we conclude it supports our interpretation of Kansas law that the city manager was empowered to remove Mr. Farthing without cause.

### 2.

In the alternative, Mr. Farthing asserts the city's personnel manual, along with the testimony of Mr. Montague, is sufficient to create a genuine issue of material fact on the issue of whether he had an implied contract[4] for continued employment which he contends would be sufficient to create a protected property interest under Kansas law. Although we agree with Mr. Farthing's understanding of Kansas law, we believe the evidence he presented to the district court is insufficient to create a genuine issue of material fact.

■■■ Under Kansas law, "[a]n implied contract may also be an exception to the general rule in Kansas that public employees have no property or vested interest in public office." *Elam,* 753 F.Supp. at 1537 (citing *Pilcher,* 787 P.2d at 1208); *see also Riddle,* 754 P.2d at 469 (recognizing that an implied contract for a definite period of time might be sufficient to establish a protected property interest as it would tend to rebut the presumption of at-will employment created by an indefinite duration of employment). While we are cognizant of the fact that Kansas courts hold the existence of an implied contract is "normally" a factual issue heavily dependent on the intent of the parties, *see, e.g., Brown v. United Methodist Homes for the Aged,* 249 Kan. 124, 815 P.2d 72, 80 (1991) (citing *Allegri v. Providence–St. Margaret Health Ctr.,* 9 Kan.App.2d 659, 684 P.2d

1031, 1035 (1984)); *Koopman,* 972 F.2d at 1165 (noting *Brown* stands for the proposition that whether an implied-in-fact contract exists is a question of fact "with rare exceptions"), we believe the facts presented to the district court are insufficient to create a factual issue to survive summary judgment.

■■■ In *Brown,* the Kansas Supreme Court addressed the issue of implied contracts, and stated "[t]he written personnel policy alone is not sufficient to establish an implied contract of employment of a term of specific duration." *Brown,* 815 P.2d at 83; *see also Conaway,* 853 F.2d at 794 ("Kansas law holds that a unilateral expression in a personnel manual, which is not bargained for, cannot alone be the basis for an employment contract."). The *Brown* court noted that the personnel manual, coupled with additional testimony of Mr. Brown's supervisor, was sufficient in that case to uphold the district court's denial of the defendant's motions for a directed verdict and for a judgment notwithstanding the verdict. *Id.; see also Koopman,* 972 F.2d at 1165 ("not much additional evidence is required to create an issue of fact on the [implied contract] claim [under *Brown* ]."). The sum total of the testimony deemed sufficient in *Brown* was the supervisor's statement that the employer's philosophy was "to be fair to the employees," and the supervisor's acknowledgments that two clerical mistakes had been made regarding Mr. Brown's leaves of absence. *See Brown,* 815 P.2d at 83.

In reviewing the evidence presented by Mr. Farthing in opposition to the motion for summary judgment, the district court first noted the pretrial order reflected that Mr. Farthing was relying exclusively upon the personnel manual in support of his implied contract claim.[5] Relying on *Brown* and *Conaway,* the district court concluded this evidence was inadequate under Kansas law to withstand the defendant's otherwise properly supported motion for summary judgment.

---

4. It is undisputed that Mr. Farthing did not have an express contract of employment.

5. The district court's order stated "[i]n the pretrial order, the plaintiff relies only upon the provisions of the Personnel Manual in support of [his] claim for an implied contract."

In noting Mr. Farthing's exclusive reliance on the personnel manual, the district court expressly refused to allow Mr. Farthing to rely on other evidence beyond the scope of the pretrial order. Mr. Farthing had attempted to rely on certain statements Mr. Montague allegedly made to him, statements arguably supporting his claim of for cause employment. These statements might have been sufficient to constitute the type of additional evidence necessitated by *Brown* beyond the personnel manual that would support an implied contract claim. Separate and apart from these oral statements, however, the plaintiff also attempted to rely on the deposition testimony of Mr. Montague in opposition to the motion for summary judgment. The language used by the district court in its order suggests that it did not consider this evidence either, although it appears to have been properly submitted to the court by Mr. Farthing.[6] We need not decide whether this evidence was actually considered by the district court because we do not believe the deposition testimony[7] would suffice under *Brown* and *Conaway* to preclude the entry of summary judgment.[8]

Although the pretrial order was not made a part of the record in this case, the record does indicate it was signed and entered several months before the motion for summary judgment was filed and ultimately resolved. Taking the district court's statement that the plaintiff "relies only upon" the provisions of the personnel manual at face value, then one of two things occurred: either the deposition testimony was not properly submitted, or if it was, it may not have been considered. If the deposition testimony was not properly submitted, then it is clear the district court correctly granted the City's motion for summary judgment because the personnel manual, standing alone, was insufficient as a matter of law under *Brown* to survive summary judgment. If, however, this evidence was properly submitted to the district court, but was not considered,[9] then we must assess whether this evidence alters the district court's conclusion.

As an initial matter, we agree with the district court's finding that the personnel manual, as opposed to the city ordinances, restricts the city manager's removal power to remove only for "cause." As noted, though, this fact alone is insufficient to permit the implied contract issue to survive summary judgment. *See Brown,* 815 P.2d at 83. Under *Brown,* a plaintiff claiming an implied contract for a definite duration can survive summary judgment by introducing a handbook or manual *plus* some independent, probative evidence bearing on the issue of the defendant's intent. *See Brown,* 815 P.2d at 80, 83; *see also Conaway,* 853 F.2d at 794. In *Brown,* the handbook, combined with independent evidence in the form of the testimony of a supervisor, was deemed sufficient to survive a directed verdict[10] and allow the

---

6. Our belief that the district court may not have considered the deposition testimony of Mr. Montague rests on two facts. First, the district court's order did not reference this seemingly relevant testimony or explain why it did not preclude summary judgment. Mr. Farthing's reply brief in this court characterizes the district court as having "ignor[ed]" Mr. Montague's testimony. Second, Mr. Farthing's motion to reconsider the order granting summary judgment relies heavily on this evidence and seems to imply that reconsideration was warranted precisely because this evidence was not considered initially.

7. In his motion to reconsider and on appeal, the plaintiff relies only upon Mr. Montague's deposition testimony and does not argue that the oral statements should have been considered. Therefore, we limit our discussion to the deposition testimony.

8. As mentioned above, we review the grant of a motion for summary judgment *de novo. See Al-*

*len,* 8 F.3d at 1476. Therefore, we are not precluded from considering whether this additional evidence would affect the district court's conclusion that summary judgment was appropriate.

9. The plaintiff's opposition to the City's motion for summary judgment before the district court, which is part of the record on appeal, makes repeated references to the deposition testimony of Mr. Montague, testimony which was apparently submitted as an attachment to the opposition to summary judgment. Thus, it appears this evidence was in fact properly submitted by Mr. Farthing to the district court.

10. The fact that *Brown* dealt with whether the evidence was sufficient to survive a directed verdict, whereas this case involves the sufficiency of the evidence regarding a motion for summary judgment, is irrelevant. As the Supreme Court made clear in *Anderson,* the standard for deciding whether there is a "genuine" issue of materi-

issue to go to the jury. *See Brown,* 815 P.2d at 83. The supervisor's testimony in that case related to matters other than the personnel handbook at issue and constituted probative evidence on the issue of the defendant's intent, a fact of critical importance to this type of claim under Kansas law. *Id.* at 80, 83.

In contrast to the evidence in *Brown,* the deposition testimony of Mr. Montague in this case involved a verbatim restatement of the plain language of the relevant sections of the personnel manual. In essence, Mr. Montague's testimony simply reiterates what the personnel manual already says in no uncertain terms. Its evidentiary worth is merely as corroborative evidence of an otherwise undisputed fact, and in essence, amounts to nothing more than reliance on the personnel manual itself. In other words, it does not add anything above and beyond the terms of the personnel manual, a fact distinguishing this case from *Brown.* We do not believe the Kansas courts intended *Brown* to permit this type of evidence to suffice to withstand a motion for summary judgment. Accordingly, we find consideration of this testimony would not alter the district court's conclusion that summary judgment was warranted because under Kansas law, as set forth in *Brown,* reliance on the personnel manual alone is insufficient to withstand a motion for summary judgment.

## CONCLUSION

There is some degree of difficulty inherent in a federal court attempting to predict how a state court would apply its own legal principles to a particular set of facts. Nonetheless, we believe our conclusion in this case is faithful to our obligation to discern and apply the law of Kansas in the same manner as would the courts of that state. For all of the reasons enunciated above, Mr. Farthing failed to demonstrate he possessed a legitimate claim of entitlement to his continued employment as the Fire Chief of the City of Shawnee. Accordingly, we **AFFIRM** the

district court's order granting the City's motion for summary judgment.

al fact under Rule 56(c) "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)." *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511; *see also id.* at 251, 106 S.Ct. at 2512 (noting that the "genuine issue" standard under Rule 56(c) is "very close" to the "reasonable jury" standard under Rule 50(a)).