The Honorable Brenda K. Landwehr State Representative, 91st District 1927 N. Gow Wichita, Kansas 67203-1103
Dear Representative Landwehr:
As representative for the ninety-first district, you request our opinion regarding whether enactment of provisions similar to those enunciated in 1996 senate bill no. 636 (S.B. 636) would violate the due process clause of the United States constitution. This opinion is limited to reviewing due process, and does not address the obligations of a unified school district under the individuals with disabilities education act (IDEA), 20 U.S.C. § 1400 et seq. and K.S.A. 72-5393.
In its present form, Kansas law requires:
 "Any school district which provides auxiliary school services to pupils attending its schools shall provide on an equal basis the same auxiliary school services to every pupil, whose parent or guardian makes a request therefor, residing in the school district and attending a private, nonprofit elementary or secondary school whether such school is located within or outside the school district. . . . Speech and hearing diagnostic services and diagnostic psychological services, if provided in the public schools of the school district, shall be provided in any private, nonprofit elementary or secondary school which is located in the district. Therapeutic psychological and speech and hearing services and programs and services for exceptional children, which cannot be practically provided in any private, nonprofit elementary or secondary school which is located in the school district, shall be provided in the public schools of the school district, in a public center, or in mobile units located off the private, nonprofit elementary or secondary school premises as determined by the school district; and, if so provided in the public schools of the school district or in a public center, transportation to and from such public school or public center shall be provided by the school district." K.S.A. 72-5393.
Auxiliary school services include speech and hearing diagnostic services, diagnostic psychological services, therapeutic psychological and speech and hearing services, and programs and services for exceptional children. K.S.A. 72-5392.
In Fowler by Fowler v. Unified School District No. 259 (Fowler I),900 F. Supp. 1540 (D.Kan. 1995), the court determined the obligation of the school district to provide interpretive services for a pupil with a hearing disability whose parents chose to place the pupil in a private, nonsectarian school located within the boundaries of the school district. After reviewing provisions of the individuals with disabilities education act (IDEA), 20 U.S.C. § 1400 et seq. and K.S.A.72-5392 et seq., the court granted the plaintiff's request for declaratory and injunctive relief.
 "A proper reading of all the regulatory and statutory provisions and the applicable case law leads to the inescapable conclusion that the District must provide interpretive services for Michael at Collegiate. . . . The court finds that the plaintiff has shown by a preponderance of the evidence that the District must provide interpretive services to Michael at Collegiate in accordance with his [individualized education plan]." Fowler I, 900 F. Supp. at 1546.
The court further ordered the school district to reimburse plaintiffs $15,550.43 for the costs paid by the plaintiffs for interpretive services provided at Wichita Collegiate during the 1994-95 and 1995-96 school years. The case is on appeal to the tenth circuit court of appeals. SeeFowler by Fowler v. Unified School District No. 259 (Fowler II),907 F. Supp. 348 (D.Kan. 1995).
Fowler I was the catalyst for 1996 senate bill no. 636. Under the bill, it appears unified school districts would be responsible for providing auxiliary school services to pupils of private schools; however, S.B. 636 would not require that the services be provided "on an equal basis," nor would the school districts be required to provide the services on the premises of private schools. Under such circumstances, it appears school districts would not be obligated to pay for auxiliary school services provided pupils in private schools.
 "The due process clause of the fourteenth amendment to the United States constitution does not prohibit the government from depriving an individual of `life, liberty, or property'; it protects against governmental deprivations of life, liberty, or property `without due process of law.' U.S. Const. amend. XIV; see Baker v. McCollan, 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979). In determining whether an individual has been deprived of his right to due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of protection. (Citations omitted.)" Farthing v. City of Shawnee, Kan., 39 F.3d 1131, 1135 (10th Cir. 1994).
Therefore, it must be determined whether an individual possesses a protected property interest in the continued receipt, free of charge, of auxiliary school services provided at private schools. To have a property interest in the benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.Board of Regents v. Roth, 408 U.S. 564, 577, 33 L.Ed.2d 548, 92 S.Ct. 2701
(1972).
Property interests are not created by the constitution but rather are created and defined by existing rules and understandings that stem from an independent source such as state law. Roth, 408 U.S. at 577;Farthing, 39 F.3d at 1135. Here, the opportunity to receive auxiliary school services at private schools is based on the provisions of K.S.A.72-5393. The statute obligates a school district which provides auxiliary school services in the public schools in the district to provide the services on an equal basis to pupils attending private schools in the district and whose parents have made a request therefor. The statute does not require the school district to provide all the auxiliary school services recognized under the statute, nor does it require that the services be provided to a pupil on a continuing basis. The due process clause generally confers no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual.Rust v. Sullivan, 500 U.S. 173, 201, 114 L.Ed.2d 233, 111 S.Ct. 1759
(1991). See also Atkins v. Parker, 472 U.S. 115, 129, 86 L.Ed.2d 81,105 S.Ct. 2520 (1985). Neither is education a fundamental right.U.S.D. No. 229 v. State, 256 Kan. 232, 260 (1994). Under such circumstances, a pupil attending a private school does not possess a property interest in the yearly provision, free of charge, of auxiliary school services as enunciated under K.S.A. 72-5393. Amending the statute as proposed in S.B. 636 would not violate the due process clause of thefourteenth amendment of the United States constitution.
Even if it was determined a pupil enrolled in a private school possessed a protectable interest in the yearly provision of auxiliary school services, the due process required would be met by the legislative procedure for amending state statutes. In Atkins, supra, the United States Supreme Court reviewed the due process rights of recipients of the federal food-stamp program when congress made substantive changes to eligibility requirements under the program. The court acknowledged that recipients of food-stamp benefits, as with recipients of welfare benefits, possessed a protectable property interest in the benefits.Atkins, 472 U.S. at 128.
 "This case, however, does not concern the procedural fairness of individual eligibility determinations. Rather, it involves a legislatively mandated substantive change in the scope of the entire program. Such a change must, of course, comply with the substantive limitations on the power of Congress, but there is no suggestion in this case that the amendment at issue violated any such constraint. Thus, it must be presumed that Congress had plenary power to define the scope and the duration of the entitlement to food stamp benefits, and to increase, to decrease, or to terminate those benefits based on its appraisal of the relative importance of the recipients' needs and the resources available to fund the program. The procedural component of the Due Process Clause does not `impose a constitutional limitation on the power of Congress to make substantive changes in the law of entitlement to public benefits.' Richardson v. Belcher, 404 U.S. 78, 81, 30 L.Ed.2d 231, 92 S.Ct. 254 (1971).
 "The congressional decision to lower the earned-income deduction from 20 percent to 18 percent gave many food-stamp households a less valuable entitlement in 1982 than they had received in 1981. But the 1981 entitlement did not include any right to have the program continue indefinitely at the same level, or to phrase it another way, did not include any right to the maintenance of the same level of property entitlement. Before the statutory change became effective, the existing property entitlement did not qualify the legislature's power to substitute a different, less valuable entitlement at a later date. As we have frequently noted: `(A) welfare recipient is not deprived of due process when the legislature adjusts benefit levels. . . . (T)he legislative determination provides all the process that is due.'
 "The participants in the food-stamp program had no greater right to advance notice of the legislative change — in this case, the decision to change the earned-income disregard level — than did any other voters. They do not claim that there was any defect in the legislative process. Because the substantive reduction in the level of petitioners' benefits was the direct consequence of the statutory amendment, they have no basis for challenging the procedure that caused them to receive a different, less valuable property interest after the amendment became effective." Atkins, 472 U.S. at 129-30.
As in Atkins, S.B. 636 does not focus on individual eligibility determinations but rather involves a legislatively mandated substantive change to the program. A pupil enrolled in a private school who was receiving auxiliary school services as required under K.S.A. 72-5393 is entitled to no greater notice regarding legislative amendment of the program than are other voters in the state. If in amending K.S.A. 72-5393
the legislature follows the legislative process for amending state law, the pupil has received all the notice that is required. Due process would not be violated should the legislature enact S.B. 636.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm