**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JAMES EARLE,

      Plaintiff-Appellant,

v.

CITY OF VAIL, a municipality;
G. MORRISON, Police Chief of Vail,
Vail Police Department, in his official
capacity; DEBORAH ANNIBALI,
Commander Police Officer of the City
of Vail; JOE BUSCH, Officer, OFFICER
HOFFMAN; RUSTY JACOBS, Detective
Sergeant; MIKE TRINDLE, Detective,
Police Officers for the City of Vail;
TOM GRIFFIN, Colorado Bureau of
Investigation; SCOTT JANSEN, Officer,
in their individual and official capacities,

      Defendants-Appellees.

No. 04-1288

(D.C. No. 01-D-274 (CBS))
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **ANDERSON**, and **BALDOCK**, Circuit Judges.[**]

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore

(continued...)

_____

The question in this case is whether police officers investigating the scene of an apparent suicide exceeded the scope of a homeowner's consent to investigate, thereby violating the Fourth Amendment. We have carefully reviewed the record, the parties' briefs, the district court's written orders, and the applicable law. We affirm substantially for the reasons set forth in the district court's two orders, attached hereto, granting summary judgment to Defendants.[1] When the district court accurately analyzes a case and articulates sound reasons for its decision, no useful purpose is served by us writing at length.

AFFIRMED.


Entered for the Court,


Bobby R. Baldock
Circuit Judge


_____

[**](...continued)
ordered submitted without oral argument.

[1] The district court's first order granted summary judgment to all Defendants except Tom Griffin. The same order denied Defendant Griffin's motion to dismiss. The redacted portions of that attached order address the motion to dismiss and are not relevant to this appeal. The second order granted summary judgment to Defendant Griffin.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUL 0 1 2003

GREGORY C. LANGHAM
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 01-RB-274 (CBS)

JAMES EARLE,

    Plaintiff,

v.

DEBORAH ANNIBALI, Police Officer of the City of Vail, et al.,

    Defendants.

---

## ORDER CONCERNING DEFENDANTS ██████████ ████████ MOTION FOR SUMMARY JUDGMENT

---

Blackburn, J

    This matter is before me on ████████████████████████ ████████████████████████ the Motion for Summary Judgment filed by the other defendants [ # 57], filed March 27, 2002. I have jurisdiction to consider this matter under 28 U.S.C. § 1331 (federal question) and § 1343(a)(3) (deprivation of civil rights under color of state law). For the reasons discussed below████████████████████████ ████████████████ he Motion for Summary Judgment is granted.

### I. FACTS

    On February 15, 1999, Deberah Earle discovered the body of her stepson, Michael Earle, in her home at 2407 Garmisch Drive, Vail, Colorado. Mrs. Earle called 911. When officers of the Vail Police Department arrived at her house, Mrs. Earle explained that it appeared that her stepson Michael had shot himself. *Plaintiff's Reply to Mtn. Sum. J.,* Affidavit of Deberah Earle (Earle Affidavit), ¶ 3; *Mtn. Sum. J.,* Exhibit A (Busch Affidavit). Mrs. Earle directed the police officers into the house and led them to the area where she

42

had found Michael Earle. Earle Affidavit, ¶¶ 3-4; Busch Affidavit, ¶ 3. Officer Busch of the Vail Police then asked Mrs. Earle for permission to allow other officers into the house to investigate the situation, and Mrs. Earle consented to this request. Busch Affidavit, ¶ 4; Earle Affidavit, ¶ 4.

Mrs. Earle had arranged for a friend to pick her up and take her to Denver to be with her husband, Dr. James Earle, who is the plaintiff. Before Mrs. Earle's departure, Commander Deborah Annibali of the Vail Police Department obtained Mrs. Earle's consent to have police and investigators remain in the house to conduct their investigation in Mrs. Earle's absence. *Mtn. Sum. J.*, Exhibit B (Annibali Affidavit), p. 1. Mrs. Earle says that, as she was preparing to leave, Commander Annibali said that the police officers would remain outside. Earle Affidavit, ¶ 6. According to Mrs. Earle, she told the officers that "they could stand inside until the coroner completed his official business." *Id.*, ¶ 6. Mrs. Earle also says that the "actions of the officers lead (sic) me to believe that their investigation would be limited to the scene where Michael was found." *Id.*, ¶ 8.

Commander Annibali says she did not advise Mrs. Earle that officers would wait outside. *Defendants' Reply*, Exhibit A (Second Annibali Affidavit), ¶ 8. Commander Annibali says she asked Mrs. Earle if she would "consent to have police and investigators remain in her home to conduct an investigation after she left her home for Denver." Annibali Affidavit, p. 1. "Mrs. Earle gave authorization for police and investigators to remain in the house during her absence." *Id.* Mrs. Earle never indicated that her consent was restricted to the bathroom area only. *Defendants' Reply*, Exhibit A (Second Annibali Affidavit), ¶ 3. Commander Annibali gave her business card to Mrs. Earle and told Mrs.

2

Earle to call the Vail Police Department if Mrs. Earle wanted to speak with Commander Annibali. Annibali Affidavit, p. 1.

While at the Earle residence, Commander Annibali spoke by telephone to the plaintiff, James Earle. They discussed the investigation. Annibali Affidavit, pp. 1-2; Earle Affidavit, ¶ 2. Commander Annibali explained to Dr. Earle that she was waiting for the Colorado Bureau of Investigation to arrive so they could process the scene. Annibali Affidavit, p. 1-2. It is undisputed that during these conversations, Dr. Earle did not object to the presence of police and investigators in his home. *Id.*, p. 2. Dr. Earle ratified Mrs. Earle's consent and made no effort to rescind or limit that consent.

An office area, including a computer, were in plain view of the vicinity where the body of Michael Earle was found. Second Annibali Affidavit, ¶ 5. Two suicide notes were found next to the computer in the office area, and the computer was on when police officers found the suicide notes. Second Annibali Affidavit, ¶ 4; *Mtn. Sum. J.*, p. 2. The suicide notes and the central processing unit (CPU) of the computer were taken into evidence by the police officers. *Mtn. Sum. J.*, pp. 2-3. The computer was returned to Dr. Earle a short time later, and its contents were not searched. *Defendants' Reply*, p. 4; Exhibit B (receipt for return of computer).

In his Second Amended Complaint, Dr. Earle alleges that the defendants violated his rights under the Fourth and Fourteenth Amendments when police officers conducted a search of his residence and when they seized "information and objects," including the suicide notes and the computer. *Second Amended Complaint*, ¶¶ 15, 18. Dr. Earle says he was not aware of the search of his home and the seizure of his computer until February 16, 1999, the day after his son's suicide. He seeks an award of damages.

3

44

███████████████████████████████████████████████

████████ The defendants associated with the Vail Police Department filed the Motion for

Summary Judgment.

████████████████████

███████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

4

45





### III. MOTION FOR SUMMARY JUDGMENT

With regard to the Motion for Summary Judgment, I have considered the pleadings, discovery, and affidavits on file, together with the arguments advanced and authorities cited by the parties in their respective briefs. I have employed the analysis required by apposite law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex*

47

*Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990); *Redmon v. United States*, 934 F.2d 1151,1155 (10th Cir. 1991); and *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir.1994).

Under FED. R. CIV. P. 56(c), summary judgment is proper only if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to summary judgment as a matter of law. *Farthing v. City of Shawnee, Kan.* 39 F.3d 1131, 1134 (10th Cir. 1994). A "material" fact is one "that might affect the outcome of the suit under the governing law," *Id.* at 1135 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)), and a "genuine" issue is one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Id.*).

The Vail defendants argue that qualified immunity shields them from Dr. Earle's claims. The Vail defendants' qualified immunity defense is based on their assertion that Dr. and Mrs. Earle consented to the search that the defendants undertook. In addition, the Vail defendants argue that the suicide notes were in plain view next to the computer. Under these circumstances, the defendants argue, the challenged search and seizure were lawful and did not violate any of the plaintiff's clearly established rights.

A. Consent. "Although a search is generally deemed unreasonable unless it is conducted pursuant to a valid warrant, it is well-settled that an exception exists for searches made following voluntary consent by an individual with authority over the place

7

48

searched." *United States v. Rodriguez-Garcia*, 983 F.2d 1563, 1567 (10th Cir. 1993) (quotation omitted). The scope of a consent search is limited by the breadth of the consent to search. *U.S. v. Wacker*, 72 F.3d 1453, 1470 (10th Cir. 1995), *cert. denied*, 523 U.S. 1035 (1998). An individual may limit the scope of a consent to search so long as he does so expressly and explicitly. *Id.* Once a party limits his consent, law enforcement officers must conduct their search within the scope of the consent for the search to remain consensual. *Id.* The standard for measuring the scope of a person's consent under the Fourth Amendment is objective reasonableness. *United States v. Ramstad*, 219 F.3d 1263, 1266 (10th Cir. 2000). Objective reasonableness means what the typical reasonable person would understand from the exchange between the officer and the consenting individual. *Id.*

Here, it is undisputed that Mrs. Earle allowed the defendant Vail police officers into her house to investigate the apparent suicide of Michael Earle. Mrs. Earle's subjective view of her consent led her to "believe that (the officers') investigation would be limited to the scene where Michael was found." Earle Affidavit, ¶ 8. Michael Earle was found in a bathroom. Nothing in the record indicates that Mrs. Earle explicitly limited her consent to the bathroom where Michael Earle was found. I find that, under the circumstances of this case, a typical reasonable person would not understand Mrs. Earle's consent to be limited to the bathroom. Rather, a typical reasonable person would understand that the investigation of a suicide readily could involve places other than the small room where the body was found. In such circumstances, the actions of the decedent prior to death commonly are understood to be relevant to a determination of the cause of death and to a verification that the death was, in fact, caused by suicide. Thus, a typical reasonable

8

person would not view Mrs. Earle's consent to investigate the apparent suicide as limited to the small bathroom where Michael Earle was found.

It is undisputed that the suicide notes and computer were found in a room close to and visible from the area just outside of the bathroom. Based on its proximity to Michael Earle's body, this area was likely to contain evidence of Michael Earle's actions prior to his death. Thus, the area where the computer and note were found was within the area which a typical reasonable person would understand to be involved in the investigation of an apparent suicide. This area, therefore, was within the scope of Mrs. Earle's consent to permit the Vail officers to be in her home to investigate the apparent suicide of Michael Earle. An objectively reasonable police officer would view this area as falling within Mrs. Earle's consent. The defendants' search of this area was reasonable and was within the scope of Mrs. Earle's consent.

B. Plain View. The Vail defendants argue that even if Mrs. Earle's consent was as narrow as she claims it to have been, they still properly searched the area where the suicide notes and computer were found because the notes and computer were in plain view. Police officers may seize evidence that is in plain view without a warrant. *United States v. Castorena-Jaime*, 285 F.3d 916, 924 (10th Cir. 2002) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971)). "A warrantless seizure of evidence is sustainable if (1) the police officer was lawfully located in a place from which to plainly view the item; (2) the officer had a lawful right of access to the item; and (3) it was immediately apparent that the seized item was incriminating on its face." *Id.* at 924.

Here, it is undisputed that the Vail officers lawfully were present in the area just outside the bathroom where Michael Earle's body was found. It also is undisputed that the

9

suicide notes and computer were plainly visible from the area outside of the bathroom. Under the circumstances, the notes unquestionably were relevant to the investigation of the apparent suicide. The officers had a lawful right to access the suicide notes because they were in plain view from an area in which the officers lawfully were present. While the notes were not necessarily incriminating, they were, on their face, directly relevant to the police officers' investigation of Michael Earle's death.

It is undisputed that the suicide notes were found next to the computer, and that the computer was on when the notes were found. Further, it is undisputed that these circumstances indicated that the suicide notes likely were prepared on the computer. Under these circumstances, information on the computer, like the notes themselves, was relevant to the investigation of the apparent suicide. The notes and the computer were seized reasonably and properly as evidence in the plain view of police officers investigating the apparent suicide. Again, a search of the information on the computer itself is not at issue.

C. Qualified Immunity. For the reasons discussed above, I conclude that the search and seizure challenged by Dr. Earle did not violate his rights under the Fourth and Fourteenth Amendments. Thus, I also conclude that the Vail defendants' conduct did not violate clearly established statutory or constitutional rights of which a reasonable police officer would have known. Qualified immunity, therefore, shields the Vail defendants from Dr. Earle's claims.

D. Conclusion. Viewing the evidence in the record in the light most favorable to Dr. Earle, no rational trier of fact could find for Dr. Earle based on the showing made in the motion and response. The Vail defendants are entitled to judgment as a matter of law.

10

THEREFORE, IT IS ORDERED as follows:



3. That the Vail defendants' Motion for Summary Judgment [ # 57], filed March 27, 2002, is **GRANTED**;

4. That the Second Amended Complaint and this action are **DISMISSED with prejudice** as to defendants Deborah Annibali, Joe Busch, Scott Jansen, Officer Hoffmann, Rusty Jacobs, Mike Trindle, City of Vail, and Police Chief G. Morrison; and

5. That defendants Deborah Annibali, Joe Busch, Scott Jansen, Officer Hoffmann, Rusty Jacobs, Mike Trindle, City of Vail, and Police Chief G. Morrison a **DROPPED** as parties to this action, and the caption is **AMENDED** accordingly.

Dated at Denver, Colorado this 30th day of June, 2003.

BY THE COURT:

Bob Blackburn
Robert E. Blackburn
United States District Judge

11

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Robert E. Blackburn

Civil Action No. 01-RB-274 (CBS)

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUL 1 9 2004

GREGORY C. LANGHAM
CLERK

JAMES EARLE,

    Plaintiff,

v.

AGENT TOM GRIFFIN, in his individual capacity,

    Defendants.

---

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Blackburn, J

    This matter is before me on the Defendant's Motion for Summary Judgment [# 84], filed November 26, 2003. For the reasons discussed below, the motion is granted.

### I. JURISDICTION

    I have jurisdiction to consider this matter under 28 U.S.C. § 1331 (federal question) and § 1343(a)(3) (deprivation of civil rights under color of state law).

### II. FACTS & PROCEDURAL HISTORY

    This case concerns a search of the plaintiff's residence by the defendant and other police officers. The search was undertaken as part of the investigation of the suicide of the plaintiff's son. On July 1, 2003, I entered an order granting a motion for summary judgment filed by several other defendants, all of whom were officers connected with the Vail Police Department. Defendant Tom Griffin is an agent with the Colorado Bureau of Investigation. The facts and legal issues discussed in my July 1, 2003, order are essentially identical to the facts and legal issues relevant to the claims against Griffin.

54

On February 15, 1999, Deberah Earle discovered the body of her stepson, Michael Earle, in her home at 2407 Garmisch Drive, Vail, Colorado. Mrs. Earle called 911. When officers of the Vail Police Department arrived at her house, Mrs. Earle explained that it appeared that her stepson Michael had shot himself. *Plaintiff's Reply to Mtn. Sum. J.,* Affidavit of Deberah Earle (Earle Affidavit), ¶ 3; *Mtn. Sum. J.,* Exhibit A (Busch Affidavit). Mrs. Earle directed the police officers into the house and led them to the area where she had found Michael Earle. Earle Affidavit, ¶ ¶ 3-4; Busch Affidavit, ¶ 3. Officer Busch of the Vail Police then asked Mrs. Earle for permission to allow other officers into the house to investigate the situation, and Mrs. Earle consented to this request. Busch Affidavit, ¶ 4; Earle Affidavit, ¶ 4.

Mrs. Earle had arranged for a friend to pick her up and take her to Denver to be with her husband, Dr. James Earle, who is the plaintiff. Before Mrs. Earle's departure, Commander Deborah Annibali of the Vail Police Department obtained Mrs. Earle's consent to have police and investigators remain in the house to conduct their investigation in Mrs. Earle's absence. *Mtn. Sum. J.,* Exhibit B (Annibali Affidavit), p. 1. Mrs. Earle says that, as she was preparing to leave, Commander Annibali said that the police officers would remain outside. Earle Affidavit, ¶ 6. According to Mrs. Earle, she told the officers that "they could stand inside until the coroner completed his official business." *Id.,* ¶ 6. Mrs. Earle also says that the "actions of the officers lead (sic) me to believe that their investigation would be limited to the scene where Michael was found." *Id.,* ¶ 8.

Commander Annibali says she did not advise Mrs. Earle that officers would wait outside. *Defendants' Reply,* Exhibit A (Second Annibali Affidavit), ¶ 8. Commander Annibali says she asked Mrs. Earle if she would "consent to have police and investigators remain in her home to conduct an investigation after she left her home for Denver."

2

Annibali Affidavit, p. 1. "Mrs. Earle gave authorization for police and investigators to remain in the house during her absence." *Id.* Mrs. Earle never indicated that her consent was restricted to the bathroom area only. *Defendants' Reply*, Exhibit A (Second Annibali Affidavit), ¶ 3. Commander Annibali gave her business card to Mrs. Earle and told Mrs. Earle to call the Vail Police Department if Mrs. Earle wanted to speak with Commander Annibali. Annibali Affidavit, p. 1.

While at the Earle residence, Commander Annibali spoke by telephone to the plaintiff, James Earle. They discussed the investigation. Annibali Affidavit, pp. 1-2; Earle Affidavit, ¶ 2. Commander Annibali explained to Dr. Earle that she was waiting for the Colorado Bureau of Investigation to arrive so they could process the scene. Annibali Affidavit, p. 1-2. It is undisputed that during these conversations, Dr. Earle did not object to the presence of police and investigators in his home. *Id.*, p. 2. Dr. Earle ratified Mrs. Earle's consent and made no effort to rescind or limit that consent.

Griffin arrived at the scene at about 9:55 p.m. to conduct an investigation on behalf of the Colorado Bureau of Investigation. *Motion for summary judgment*, Affidavit of Agent Tom J. Griffin, ¶ 7. When Griffin arrived at the scene, Commander Annibali told Griffin that both Deborah Earle and the plaintiff, James Earle, had given their consent for the officers to remain in the house and to process evidence. *Id.*, ¶ ¶ 5-6. Griffin remained at the scene until about 5:20 a.m.

An office area, including a computer, were in plain view of the vicinity where the body of Michael Earle was found. Second Annibali Affidavit, ¶ 5. Two suicide notes were found next to the computer in the office area, and the computer was on when police officers found the suicide notes. Second Annibali Affidavit, ¶ 4; *Mtn. Sum. J.*, p. 2. The suicide notes and the central processing unit (CPU) of the computer were taken into

evidence by the police officers. *Mtn. Sum. J.*, pp. 2-3. The computer was returned to Dr. Earle a short time later, and its contents were not searched. *Defendants' Reply*, p. 4; Exhibit B (receipt for return of computer).

In his Second Amended Complaint, Dr. Earle alleges that Griffin violated Dr. Earle's rights under the Fourth and Fourteenth Amendments when Griffin conducted a search of Earle's residence and when Griffin seized "information and objects," including the suicide notes and the computer. *Second Amended Complaint*, ¶¶ 15, 18. Dr. Earle says he was not aware of the search of his home and the seizure of his computer until February 16, 1999, the day after his son's suicide. Earle seeks an award of damages. Griffin argues that he is entitled to summary judgment on Earle's claims.

## III. SUMMARY JUDGMENT ANALYSIS

I have considered the pleadings, discovery, and affidavits on file, together with the arguments advanced and authorities cited by the parties in their respective briefs. I have employed the analysis required by apposite law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990); *Redmon v. United States*, 934 F.2d 1151,1155 (10th Cir. 1991); and *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir.1994).

Under FED. R. CIV. P. 56(c), summary judgment is proper only if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to summary judgment as a matter of law. *Farthing v. City of Shawnee, Kan.* 39 F.3d 1131, 1134 (10th Cir. 1994). A "material" fact is one "that might affect the outcome of the suit under

the governing law," *Id.* at 1135 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)), and a "genuine" issue is one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Id.*).

Griffin argues that qualified immunity shields him from Dr. Earle's claims. Griffin's qualified immunity defense is based on his assertion that Dr. and Mrs. Earle consented to the search that Griffin undertook. In addition, Griffin argues that the suicide notes were in plain view next to the computer. Under these circumstances, Griffin asserts, the challenged search and seizure were lawful and did not violate any of the plaintiff's clearly established rights.

I analyzed the consent and the plain view issues in my July 1, 2003, order granting summary judgment in favor of the Vail defendants. The same facts and legal analysis are applicable to the claims against Griffin. I adopt and incorporate the authorities and analysis discussed in detail in my July 1, 2003, order in this case. In short, the search conducted by Griffin was within the scope of Mr. and Mrs. Earle's consent permitting Griffin to be in their home to investigate the apparent suicide of Michael Earle. Further, even if the consent was more narrow, as the plaintiff argues, the notes and the computer were seized reasonably and properly as evidence in the plain view of police officers investigating the apparent suicide. Again, a search of the information on the computer itself is not at issue.

The doctrine of qualified immunity shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 when their actions do not violate clearly established constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Derda v. City of*

5

*Brighton, Colo.*, 53 F.3d 1162, 1163-64 (10th Cir. 1995). Griffin's conduct did not violate any clearly established statutory or constitutional rights of which a reasonable police officer would have known. Qualified immunity, therefore, shields Griffin from Dr. Earle's claims.

## IV. CONCLUSION

Viewing the evidence in the record in the light most favorable to Dr. Earle, no rational trier of fact could find for Dr. Earle based on the showing made in the motion and response. Griffin entitled to judgment as a matter of law.

**THEREFORE, IT IS ORDERED as follows:**

1. That defendant Tom Griffin's motion for summary judgment [# 84], filed November 26, 2003, is **GRANTED**;

2. That the Second Amended Complaint and this action are **DISMISSED with prejudice** as to Tom Griffin;

3. That based on this order and my July 1.2003, order in this case, **JUDGMENT SHALL ENTER** in favor of each defendant named in the plaintiff's Second Amended Complaint, and against the plaintiff; and

4. That each defendant named in the plaintiff's Second Amended Complaint is **AWARDED** their costs, to be taxed by the Clerk of the Court pursuant to FED. R. CIV. P. 54(d)(1) and D.C.COLO.LCIvR 54.1.

Dated at Denver, Colorado this 19th day of July, 2004.

BY THE COURT:

Robert E. Blackburn
United States District Judge

59